*In re* EDUCATIONAL ENDOWMENT ASSOCIATION, in liquidation.

Argued Jan. 2, 1894.   Affirmed Jan. 12, 1894.

No. 8492.

**Rights of holders of immature policies in mutual endowment associations on their dissolution.**

Where a mutual endowment association, whose policies are to be paid from a fund raised by assessments on the holders of policies, is dissolved under 1878 G. S. ch. 34, § 415, the maturing of its immatured policies is arrested, and the right of holders thereof is to share, as members of the association, in its assets, after its liabilities are discharged.

**When such policies mature.**

Where the policies are payable in the event that the beneficiaries arrive at a specified age, they do not mature, so as to be debts of the association, until the beneficiaries reach that age, even though, before then, all dues and assessments that can be required of the holders have been paid.

Appeal by claimant, Thomas K. Gray, from a judgment of the District Court of Hennepin County, *Frederick Hooker*, J., entered July 29, 1893, disallowing his claim.

On May 6, 1885, Gray became a member of the Educational Endowment Association of Minneapolis. He in effect·made with that Corporation a contract to pay to it certain sums and assessments from time to time and in consideration thereof it agreed to pay his daughter, Julia M. Gray, then six years old, $1,290.31, when and if she should become fourteen years of age, viz. on September 27, 1892. He paid all dues and. assessments and performed the contract in full on his part. On August 24, 1892, there was in the treasury of the corporation $62,548, belonging to the endowment

fund; but within three months thereafter numerous endowed children would reach the age at which their endowments matured sufficient to exhaust the entire fund, leaving the great body of endowed children whose endowments would mature later, without a fund for their payment. Those interested for the remote maturing endowments petitioned the District Court stating the impending insolvency and asked a dissolution of the corporation and for the appointment of a receiver. The Court on that day granted the petition and appointed O. C. Merriman receiver and restrained the corporation from doing further business. Julia M. Gray lived to be fourteen years of age and her father thereafter presented her claim for $1,290.31, but the Court held she was not entitled to it, and ordered the assets of the corporation distributed *pro rata*, to those who had paid in their money, according to the amount contributed by each. Judgment was so entered and Gray appeals.

*Young & Fish,* for appellant.

The question in this appeal is as to the right of the Court to divert the endowment fund of this association, from the purpose for which it was accumulated, and order it distributed to the members of the association *pro rata* according to the amount paid in by them respectively. The Court assumed that upon the filing of the order appointing a receiver all the corporate powers of the association were at an end, and the funds in the treasury of the corporation being relieved of any charge growing out of corporate contract or obligation, belonged to the members as unappropriated capital stock. The legal effect of this order depends upon the provisions of the statute. 1878 G. S. ch. 34, §§ 415, 416, 417; *Bowe* v. *Minnesota Milk Co.,* 44 Minn. 460; *Life Ass'n of America* v. *Fassett,* 102 Ill. 315; *Chamberlin* v. *Huguenot Mfg. Co.,* 118 Mass. 532; *Thornton* v. *Marginal F. Ry. Co.,* 123 Mass. 32; *Schleider* v. *Dielman,* 44 La. An. 462; 2 Morawitz, Corp., §§ 1036, 1037; Wait, Insolv. Corp., §§ 348, 382; *Ramsey* v. *Peoria M. & F. Ins. Co.,* 55 Ill. 311; *Bewick* v. *Alpena H. I. Co.,* 39 Mich. 700; *Huguenot Nat. Bank* v. *Studwell,* 6 Daly 13; *Pondville Co.* v. *Clark,* 25 Conn. 97; *Austin* v. *Board of Aldermen, &c.,* 96 Mass. 359; *Angel* v. *Silsbury,* 19 How. Pr. 48; *Howe* v. *Deuell,* 43 Barb. 504; *Moseby* v. *Burrow,* 52

Tex. 396; *Moran* v. *Lydecker*, 27 Hun 582; *Greenwood* v. *Freight Co.*, 105 U. S. 13.

The Court erred in denying the petition of appellant, asking that the receiver be directed to pay petitioner out of said fund, for the benefit of the beneficiary named, the sum specified in the certificate of endowment. *In re Equitable R. F. Ass'n*, 131 N. Y. 354; *Burdon* v. *Massachusetts S. F. Ass'n*, 147 Mass. 360; *People* v. *National Trust Co.*, 82 N. Y. 287; *Vanatta* v. *New Jersey M. Life Ins. Co.*, 31 N. J. Eq. 15.

*Haynes & Chase*, for respondent.

Under the rules of the common law and provisions of the statutes, when a corporation is legally dissolved and its assets placed in the hands of a receiver, his duty is to convert the assets into cash and pay and satisfy all debts existing at the date of the dissolution and to distribute the residue to the members according to their respective interests in the fund. If the business of the corporation is to collect and accumulate assessments and apply the same to the payment of maturing endowments, it cannot after its dissolution continue to pay endowments, any more than it can continue to collect assessments and dues. The effect of the decree of dissolution was to discontinue the business *in toto*, not merely in part. The cases cited by the appellant are inapplicable to the case at bar. The dissolution of a corporation deprives it of its power to perform its contracts, although it may be held in damages for the breach of such contract. *Bowe* v. *Minnesota Milk Co.*, 44 Minn. 463; *Vanatta* v. *New Jersey M. Life Ins. Co.*, 31 N. J. Eq. 15; *In re Equitable R. F. Life Ass'n*, 131 N. Y. 354.

The sum to be paid Gray was by the express terms of the contract, made dependent upon the survival of the beneficiary to a certain age. At the time of the judgment of dissolution, the beneficiary had not arrived at the required age, and hence her claim could not be considered as *debitum in praesenti solvendum in futuro*. *Mayer* v. *Attorney General*, 32 N. J. Eq. 815; *Commonwealth* v. *Massachusetts Ins. Co.*, 119 Mass. 45; *Niblack*, Mut. B. Soc., § 145; *Stamm* v. *Northwestern M. B. Ass'n*, 65 Mich. 317.

GILFILLAN, C. J.    Under 1878 G. S. ch. 34, §§ 415, 417, this corporation was dissolved, and a receiver appointed. No appeal was taken from the decree or order of dissolution, and therefore the reasons for making it are not to be considered. Pursuant to an order of the court fixing the time and manner of presenting and proving claims, such claims were presented and proved, and the court rendered judgment distributing the funds of the corporation, and, from that judgment, Gray, one of the claimants, appeals.

The association was organized in 1883, and in November, 1885, was reorganized pursuant to Laws 1885, ch. 184. Its purpose, as expressed in the articles, being to transact "endowment insurance upon the co-operative and assessment plan, to promote the culture and education of children," as follows:

"Fourth. The corporate powers of this association shall be exercised as follows:    By issuing to any person of legal age a certificate of membership covering one, (1,) two, (2,) or three (3) shares, whereby the child named in any such certificate as beneficiary shall become entitled to receive at a certain age, if living, upon each share by him or her held, seventy-five per cent. of the sum actually collected by one assessment on each share in force at the maturity of such certificate: provided, that the sum so collected and paid shall not exceed, in the aggregate, twenty-five (25) cents per day for the whole number of days covered by such certificate, and that the member shall have paid all fees, assessments, and dues, and shall have fully complied with the rules, regulations, and by-laws of said association. No more than three (3) shares shall be placed upon any one child.

"The amounts of the endowments to be received by the beneficiaries, and the amounts of the fees and quarterly assessments to be paid by the members, shall be graded according to the ages of the respective beneficiaries at the time of the issuance of their certificates.

"No person over sixteen years of age shall become a beneficiary in said association, and no beneficiary shall be in for a shorter period than four years.

All moneys paid into the endowment fund shall be used solely for the payment of endowments, subject, however, to such reimbursements to the members as the by-laws may prescribe."

And in May, 1890, to the original articles the following articles were added:

"Classes. Sixth. On and after the first day of June, 1890, this association shall be deemed divided into three distinct classes, which shall be known as 'A,' 'B,' and 'C,' respectively.

"Class A shall be composed of those members whose shares were written prior to the first day of June, 1887.

"Class B shall remain as now established.

"Class C shall be composed of all those members not included in either of said classes A or B, and shall also include all new members received on the present table of rates.

"Second. By adding thereto a further article, which shall read as follows: 'Endowment Fund. Seventh. On and after the first day of June, 1890, the endowment fund shall be divided between said classes, as follows: (a) Place to the separate credit of class A the amount in said fund derived from shares written prior to June 1st, 1887. (b) Place to the credit of class B, in said fund, the amount paid in by the members thereof, as shown by the records of the association. (c) Place to the credit of class C the amount in said fund received from shares written since the first day of June, 1887.

" 'Should the endowment fund belonging to either class A or class C become reduced to ten thousand dollars ($10,000) in the payment of maturing endowments, the trustees may, in their discretion, order and levy a special assessment (not exceeding original) upon all shares in force in such class, which assessment shall be due and payable within one month from date of notice: provided, however, that neither of said classes shall hereafter be liable to be assessed to pay endowments maturing in any other class.

" 'The above provision for special assessment is our construction of a like provision in the fourth article of said articles of reincorporation, and is intended to harmonize.' "

Gray had taken a policy or certificate in behalf of his daughter Julia, at that time six years of age, for the payment to her, at the age of fourteen out of the endowment fund, of $1,617.61. At the time of the dissolution he had paid on this policy all dues and assessments required, or which could ever be required, but the daughter did not reach the age of fourteen till about a month after that time. This policy belonged to class C.

The judgment, in distributing the endowment fund belonging to class C, directed payment in full of certain policies, which, as we understand, had before the dissolution become mature and payable by the beneficiaries arriving at the specified ages, and directed the remainder of that fund, less expenses, to be divided among the policy holders in that class, including Gray, *pro rata*, according to the amounts contributed by them respectively.

When, by taking a policy, one becomes a member of a corporation such as this was, he does so subject to its liability to be dissolved as this was. When dissolved, it ceases to be a corporation for the purpose of continuing the business for which it was established,— for the original purpose of the policies. It retains only power to gradually settle and close its concerns, and, upon the appointment of a receiver, that power passes to him, and its property and assets are in *custodia legis*. After the dissolution it has no power to perform its contracts, even those made with third parties. *Bowe* v. *Minnesota Milk Co.,* 44 Minn. 460, (47 N. W. 151.) As the dissolution, under 1878 G. S. ch. 34, § 415, is regarded to be voluntary, there occurs at once an entire breach of its contracts, the performance of which requires it to do the business for which it was organized, and the rights of the parties are fixed at that time. This corporation ceased to be an endowment insurance company, not only with respect to taking new policies, but with respect to the old ones. Those were no longer active, continuing policies. It could no longer meet those as they might, by their terms, mature, by assessments. The rights of the parties to them were fixed as of the date of the dissolution. If they were then mature, and neither lapse of time, nor anything else, was required to fix the company's liability on them, they stood as debts against its assets, and were to be paid before the assets could be distributed among the members. With respect to those whose maturing was arrested by the dissolution, the rights of the holders were those of members of the association, entitled to share in its assets after its debts were discharged. The right to payment in the case of matured policies, and to share in the assets in the case of those not matured, was modified by the fact that they were divided into classes, and that, by assessments upon the holders in each class, a fund was raised to secure the policies in that class as they might mature. That fund was for the benefit of all policies

of the class, and no one, until it matured, had any right to be paid out of it.

Although all assessments had been paid on Gray's policy, yet it had not matured, so as to be a debt payable in the future. The liability was not fixed, but depended on a contingency, to wit, the survival of the beneficiary until the age of fourteen. At the time of the dissolution, no one could foretell that the corporation ever would be liable to pay it. In this particular it differed from an ordinary endowment policy, payable absolutely at a fixed time, and on which all premiums have been paid. That is a present debt, though its payment is postponed to a future time.

The court's appropriation of the fund was correct.

Judgment affirmed.

(Opinion published 57 N. W. Rep. 463.)