## TOWLE v. AMERICAN BUILDING & LOAN ASS'N.[1]

(Circuit Court, N. D. Illinois. June 8, 1896.)

1. BUILDING AND LOAN ASSOCIATIONS—FULL-PAID STOCK—NEGOTIABLE INSTRUMENTS.

Holders of certificates of full-paid stock issued by a building and loan association, calling for payments of dividends at regular intervals, are not creditors of the association, as distinguished from its other members, since such certificates do not constitute promises to pay under the law merchant.

2. SAME—DISTRIBUTION IN CASE OF INSOLVENCY.

In case of insolvency of the association, holders of such certificates are only entitled, like other members, to a share of the assets proportioned to the amount they have paid in.

---

[1] Reported by Louis Boisot, Jr., Esq., of the Chicago bar.

In Equity. On objections to petitions in intervention.

Suit by Marcus M. Towle against the American Building & Loan Association to wind up the association. A receiver having been appointed, petitions in intervention were filed by parties holding certificates of full-paid stock.

McMurdy & Job, Winslow & Carr, George S. Steere, Otis & Graves, and Clarence S. Brown, for petitioners.

Lorin C. Collins, Jr., and Wm. Meade Fletcher, for receiver.

GROSSCUP, District Judge (orally). The American Building & Loan Association, whose affairs are in this court for administration under a receivership, is the ordinary building and loan association under the laws of Illinois. Under its plan of operation the members of the association pay into the common fund each month a certain stipulated amount, which fund is at intervals loaned to such as bid the highest premium for the privileges of the loan. The life of the association is expected to be seven or eight years, at which time, ordinarily, the cumulations from premiums, fines, and interest will pay out the full amount of outstanding stock upon which no loans have been made; the stock upon which loans have been made being paid by a cancellation of the debt. The petitioners here, however, are not the ordinary members of the association. These petitioners hold certificates issued to them by the association, some of which, on their face, purport to be fully paid up capital stock, and others half-paid capital stock of the association. The idea indicated by the certificates is that their holders have already paid into the common fund either the whole or the half of the shares issued to them. These certificates obligate the association to pay certain sums at intervals, either as dividends or interest, out of the earnings of the association; the stipulated rate of dividend or interest being considerably larger than the legal rate of interest in the state of Illinois. It is urged that some of these certificates have gone into the hands of purchasers for value, who had at the time no knowledge of the association, except such as is contained on the face of the certificate.

The contention of the petitioners is that these certificates are not, properly speaking, stock in the association, or mere evidences of debt by the association, but are promises to pay in the nature of commercial paper, and therefore subject to the benefits of the law merchant. In this view of these certificates, it is urged that such as are in the hands of innocent holders constitute a preferential obligation, and must be paid in full out of the funds of the association, before any division among other stockholders.

I am clear in the opinion that these certificates do not constitute promises to pay under the law merchant. Each plainly shows on its face what it is, and is not calculated to deceive any one into the belief that it is simply an obligation to pay. I very much doubt, too, if the association would have the lawful power to borrow money upon its simple promises to pay, and the takers of the certificates must know the lawful power of the association.

I am equally clear in the opinion that these certificates do not make their holders creditors of the company, as distinguished from the other members of the association. The certificates purport to be for stock. They are in fact, if lawful at all, simply paid-up capital stock. The distinction between the relation of their holders to the company and that of the other stockholders is simply that the ordinary stockholder pays in, during the period for which the association is supposed to run, his capital stock in periodical payments, while these holders have paid in their stock either wholly or partly in advance. The ordinary stockholder's profit for his investment depends upon the time the association runs, while the holders of these certificates have their profits in stipulated dividends as the time proceeds; but in both instances it is a case of profit upon money invested in the stock of the association,—the common fund which constitutes the capital stock of the association. They constitute, at best, therefore, simply a different class of stockholders.

But it is contended by the petitioners that, if they are to be regarded as special stockholders, they have these superior rights over the ordinary stockholder, namely, a guaranty of a certain amount of the assets, and the right of withdrawal of their full investment at any time. This is doubtless true if the association were a solvent concern, and were being wound up according to the natural law upon which it was based. But this association is not solvent in the sense that its operation for seven or eight years would bring about enough money to pay out the stock in full. This insolvency is due, in my judgment, to the criminal mismanagement of its officers; but, were it the result of incapacity, honest mistake, or the unforeseeable effect of the late panic, the result would be the same. These officers are alike the agents of all the stockholders, to whatever class they belong, and these unfortunate results are alike a misfortune to all these stockholders. The association, instead of going forward to its natural and expected fulfillment, is, under the circumstances, prematurely dissolved, and all that can be done is to pay back to each shareholder, out of the common fund, that proportion which in equity he is entitled to receive. Now, does an equitable division require that the stockholders who have paid in the full amount of their stock in advance should be paid back the whole amount of such advance before the stockholders paying periodically receive anything? Clearly not, in a case where the association cannot pay out dollar for dollar. The effect of such a proceeding would be to visit the entire loss upon the ordinary stockholder. I was much impressed, however, at the argument, that, in analogy to the winding up of other corporations, the stockholder who had not paid up his entire stock should be charged with the deficit as a debt in favor of the corporation, and upon this basis the division made. This looked a good deal like equalizing the situation of the shareholders; but, on further reflection, I have thought differently. The analogy does not hold good between the ordinary corporation and these building and loan associations. In the ordinary corporation, the stockholder who has paid 10, 20, or 50 per cent. on his

stock is as much interested in the corporation and its assets as the shareholder who has paid 100 per cent., the only difference being that he is a debtor to the corporation to the extent of the unpaid per cent. In case of a large profit in the dissolution of such corporations, the stockholder who has paid but 10 per cent. would realize as large a dividend, subject, of course, to the payment of his subscription debt to the corporation, as the shareholder who had fully paid up his stock. But, in these building and loan associations no stockholder, by his subscription, becomes a debtor to the association. There is no agreement on his part that he will pay to the end of seven or eight years. He pays only as long as the association exists. The whole scheme of the association is that a number of persons join together to contribute their money to a common fund, so that such common fund may be loaned out under a common administration, and in that way realize a greater benefit to the contributing parties than separate loans would probably bring. The interest of each shareholder is simply what he has contributed to that common fund, and on dissolution and distribution each shareholder has an interest pro tanto in such common fund. In the ordinary corporation the unpaid subscriptions to stock are a part of its assets. There is no unpaid subscription to the stock of a building and loan association. If the shareholder has paid periodically in accordance with the by-laws, his obligation has been fulfilled, and there is no remnant to swell the assets. The assets of the association, therefore, are simply the fund that can be realized, and all that can equitably be done with it is to pay it back to the contributors dollar for dollar, or as nearly so as possible, according to the contributions. This is division of assets pure, simple, and equitable. To charge the ordinary stockholder with the portion he would supposedly pay during the balance of the term would be to create an asset that the law of the land and the plan of these associations has not contemplated. In this view I find myself sustained by the courts of Pennsylvania, by the text-book writers on building and loan associations, and by a very able opinion of Judge Tuley, before whom the same question came in the state courts, and it meets my own sense of the equitable distribution of this fund. I will therefore sustain the objections to the petitions of these interveners, and leave the petitioners to present their claims to the fund as any other stockholder can do.