## In re YOUTHS' TEMPLE OF HONOR.

July 14, 1898.

Nos. 11,094—(203).

**Endowment Association—Failure of Scheme not Insolvency—Dissolution.**

Where an endowment association, organized under the provisions of G. S. 1894, §§ 3296–3316, is simply unable, because of the general impracticability of its scheme, to carry out its plan, it is not "insolvent" in any proper sense of the word, and therefore should not make an assignment for·the benefit of its creditors. It should wind up its affairs, and distribute its assets, under G. S. 1894, §§ 3430–3435, or in an equitable proceeding instituted for that purpose.

**Classes of Certificates—Holders not Creditors but Members.**

Upon the winding up and dissolution of such an association, the holders of all classes of certificates are to be treated as members of the association, and none are to be treated as creditors, and the rule of distribution of its assets is necessarily different from the order of payment made by it while a going concern.

**Same—Endowment Fund for Benefit of All Certificates.**

An endowment fund set apart under the by-laws for the payment of matured certificates as a trust fund is equally a trust fund for the benefit of all certificates, in proceedings to wind up the concern because it is unable to meet and pay its certificates as they mature.

**Same—Order of Payment upon Dissolution.**

When the affairs of an endowment association, organized under the statute above referred to, are being wound up because of its inability to accomplish its purpose, and its assets are to be distributed in proceedings instituted for that purpose, the expenses incident to the proceedings are first to be paid, and then the general creditors, if any, in full; and finally the residue of the trust fund must be distributed pro rata among holders of certificates without regard to whether they have matured or not.

John D. Laddy and others, holders of matured certificates in the Youths' Temple of Honor, an insolvent corporation, and C. F. Williams and others, who had given notice of withdrawal from the corporation, appealed to the district court of Hennepin county from the allowance by the assignee of the claims of the unmatured certificate holders, and the unmatured certificate holders likewise

appealed from the allowance by the assignee of the full amount of the claims of the matured certificate holders. The matter was submitted to Simpson, J., on a stipulation of facts, and he affirmed the decision of the assignee. From an order entered accordingly, John Laddy and all other holders of matured certificates, and C. F. Williams and other members who had given notice of withdrawal, appealed. Affirmed.

*Benton & Molyneaux* and *C. R. Fowler*, for appellants Laddy and others.

The claims on the certificates which had matured prior to the assignment were debts of the corporation, and should have been allowed. Vanatta v. New Jersey, 31 N. J. Eq. 15; In re Educational End. Assn., 56 Minn. 171; Freeman v. Children's End. Soc., 63 Minn. 393; Com. v. Massachusetts, 112 Mass. 116. Even if the assignment dissolved the corporation, and invested the assignee with power to wind up its affairs, it would be the duty of the assignee to convert the assets into cash, and first pay all the debts of the corporation, before he could distribute the residue to the members according to the amounts paid in by them on their certificates. In re Educational End. Assn., supra; Freeman v. Children's End. Soc., supra. But a corporation is not to be deemed dissolved until a forfeiture is judicially ascertained and adjudged. State v. Minnesota C. Ry. Co., 36 Minn. 246, 258; People v. President, 23 Wend. 254; Bradt v. Benedict, 17 N. Y. 93; Minnesota C. Ry. Co. v. Melvin, 21 Minn. 339; In re Oshkosh, 77 Wis. 366. The making of an assignment did not dissolve the corporation.

Money paid in on unmatured and unwithdrawn certificates does not constitute a valid claim against the estate. Vanatta v. New Jersey, supra; In re Educational End. Assn., supra; Wilder v. Peabody, 37 Minn. 248; Bordman v. Osborn, 23 Pick. 295; Mayer v. Attorney General, 32 N. J. Eq. 815; Com. v. Massachusetts, supra; Niblack, Mut. Ben. Soc. § 145; Stamm v. Northwestern, 65 Mich. 317.

The endowment fund is a trust fund, and is exempt from any debt due from a member or beneficiary of the association, or from any debt against the association itself. This fund must be applied

primarily to the payment of matured certificates. G. S. 1894, §§ 3295, 3312; Lake v. Minnesota M. R. Assn., 61 Minn. 107; Brown v. Balfour, 46 Minn. 68, 72; In re Educational End. Assn., supra; Heinbokel v. National S. L. & B. Assn., 58 Minn. 340; In re Equitable, 131 N. Y. 354; Burdon v. Massachusetts, 147 Mass. 360; Fogg v. Supreme Lodge, 159 Mass. 9; Niblack, Mut. Ben. Soc. § 354; 2 Bacon, Ben. Soc. § 479. The withdrawal certificate holders are not entitled to share with the matured certificate holders in the endowment fund. The contention of the matured certificate holders is that to charge that fund with a further liability it would be necessary that a new trust be created as expressly and specifically as the old trust, and with the consent of those in whose favor the old trust was created, and that no charge against the endowment fund in favor of the withdrawal claimants is made or intended. 1 Pomeroy, Eq. Jur. § 572; State v. Conklin, 34 Wis. 21, 30; High v. Malloy, 67 Ill. App. 665; Heinbokel v. National S. L. & B. Assn., supra.

*Ell Torrance*, for appellants Williams and others.

The withdrawal certificate holders claim an equal right to share in the distribution of the funds in the hands of the assignee with the matured certificate holders, and to the exclusion of members whose certificates had not matured. The certificates having been surrendered and canceled, it would seem logically to follow that the certificate holders ceased to be members, and should be classed as creditors, if that relationship was ever to exist between them and the association. McNab v. Southern, 50 S. C. 89; 2 Am. & Eng. Enc. 625.

*Isaac Peterson* and *Geo. M. Bleecker*, for respondents.

Neither the matured certificate holders nor the unmatured certificate holders are creditors of the association. They are all members, and treated as such by law, particularly in the case of insolvent companies where the equities of the situation require such a course to be pursued. Endlich, Bldg. Assns. §§ 514, 515, 110; Appeal of Criswell, 100 Pa. St. 488; Towle v. American B. & L. Assn., 75 Fed. 938; In re Home, 3 Ohio N. P. 145; Heinbokel v. National S. L. & B. Assn., 58 Minn. 340; Gibson v. Safety, 69 Ill. App. 485.

73 M.—21

The rules and by-laws of a mutual endowment association governing the distribution of its assets when a going concern, do not obtain when the concern is insolvent. Appeal of Criswell, 100 Pa. St. 488; In re Equitable, 131 N. Y. 354; Chapman v. Young, 65 Ill. App. 131; In re Sunderland, 24 Q. B. Div. 394; Williams v. United, 166 Mass. 450; Knutson v. Northwestern L. & B. Assn., 67 Minn. 201; In re Albert, 39 L. J. Ch. 539; Endlich, Bldg. Assns. § 514. Wherever a person appears as a claimant upon the estate of an insolvent endowment association, upon the ground of stock interest, he is to be treated as a member, and not as a creditor; and he is to share pro rata in the distribution of the assets upon the basis of the amount paid in, whether his stock is matured or not. Appeal of Christian, 102 Pa. St. 184; Endlich, Bldg. Assns. § 514; Sheeler's Appeal, 159 Pa. St. 594, 602; In re International, L. R. 5 Ch. App. Cas. 424; People v. Security, 78 N. Y. 114; Appeal of Criswell, supra; Relfe v. Columbia, 76 Mo. 594; Gibson v. Safety, 69 Ill. App. 485; Towle v. American B. & L. Assn., 75 Fed. 938; Kirkpatrick v. American, 170 Pa. St. 170; Williams v. United, supra; Lowne v. American, 6 Paige, 482; Endlich, Bldg. Assns. §§ 514, 515; Knutson v. Northwestern L. & B. Assn., supra.

If the endowment fund can be regarded as trust money for any purpose whatever, it is trust money for every individual who contributed to its creation; it stands for the equal benefit of every certificate holder, whether in the march of time his day of payment has arrived or not. Relfe v. Columbia, supra; People v. Security, supra; In re Equitable, supra; In re Albert, supra; In re Tonti, 173 Pa. St. 464, 483.

COLLINS, J.

The defendant Temple of Honor was an endowment association organized in 1889, under the provisions of Laws 1885, c. 184, and amendatory acts (G. S. 1894, §§ 3296–3316.) To use the words of the court below, its "general scheme was impracticable, impossible of accomplishment, and must inevitably have resulted in failure"; but the general plan and avowed purpose of this association need not be enlarged upon.

January 19, 1897, it made an assignment for the benefit of its

creditors. Its general creditors were few, and its indebtedness to these persons was but a small fraction of its assets.

When this assignment was made its members—holders of its certificates—were in three classes: First, those whose certificates had matured in accordance with the by-laws of the association, the number aggregating 16, and the face value of such certificates being $10,425.25; second, members who had given notice of cancellation and withdrawal pursuant to the articles of association, the number of such certificates being 34, and the face value aggregating $6,659.92, which, under the by-laws, had a cash surrender value; and third, members whose certificates had not matured, nor had they given notice of cancellation or withdrawal. Of these there were 782 in number, and they had paid into the treasury of the association over $95,000.

When the assignment was made the assets of the association did not exceed $15,000 in value, and of these assets all but about $100 in value belonged to and constituted what was designated in the articles as the "Endowment Fund." This fund had been created by setting apart 75 per cent. of the premiums, lapsation from nonpayment of premiums, compound interest, and lapsation by death, and as it accumulated it had been placed in the hands of a trustee, to be held and used solely for the purpose of payment of matured certificates.

Holders of certificates in each of these three classes filed claims for allowance with the assignee, precisely as if they were general creditors, and they have been so treated in all of the steps which have been taken. The assignee allowed the claims thus filed, and the controversy is now between the three classes of claimants as to their respective rights in the distribution of the assets.

The holders of matured certificates claim that they should be paid in full out of the endowment fund, in preference to the claims of any other certificate holders, on the ground that, at the time of the assignment, their certificates had matured and were existing debts against the corporation and that the endowment fund is a trust. fund set apart expressly and exclusively for the payment of their claims as they matured. The certificate holders who had served notice of cancellation and withdrawal of their certificates claim

that they should come in on an equal footing with the holders of matured certificates. It is claimed by the holders of matured certificates, and also by withdrawing certificate holders, that the claims of the unmatured certificate holders which were allowed as claims against the estate by the assignee are not debts against the estate, and that such claims should not be allowed by the assignee, and cannot be paid in a proceeding of this character. There were cross appeals to the district court taken by the holders of matured certificates, and by the holders of certificates which had not matured, and on appeal the court ordered that the assignee distribute the money on hand pro rata among all of the claimants, without regard to the classification before mentioned.

Within the usual and ordinary meaning of the word, the association was not "insolvent" when it made the assignment, for its assets greatly exceeded in value its indebtedness to its general creditors. It could not accomplish its purpose and pay its certificates in full, and in this sense and to this extent it was "insolvent." And, when speaking of this condition of affairs in associations of this same general character, the courts have almost invariably used the word "insolvent," meaning nothing more thereby than a financial inability to carry out the agreement with members. Therefore the statutory assignment should not have been made, but proceedings should have been instituted to wind up the affairs of the association, and to terminate its existence, either under G. S. 1894, §§ 3430–3435, or in accordance with well-known equitable principles, and on the ground that the purposes for which it organized could not be accomplished and had wholly failed. The deficiency in assets here, the outstanding indebtedness being insignificant in amount, did not constitute "insolvency," in any proper sense of the word, but at most was a loss of corporate assets or capital, and a consequent depreciation in the value of the certificates held by its members. Knutson v. Northwestern L. & B. Assn., 67 Minn. 201, 69 N. W. 889. But, as before stated, the proceeding has been treated as regular, and the certificate holders have been considered as creditors of an insolvent concern, and we shall dispose of the appeals on the same theory.

It has been held, almost universally, that as between themselves, and as between themselves and an association of this sort, members

are not to be treated or considered as creditors. An eminent textbook writer, when speaking of the rights of the members of building associations, states the law thus:

"Wherever, therefore, a member appears as a claimant upon the estate of an insolvent building association, upon the ground of his stock interest, he is to be treated as a member, and not as a creditor." Endlich, Bldg. Assns. (2d Ed.) § 515.

And it was held (Appeal of Criswell, 100 Pa. St. 488) that—

"Upon the insolvency of a building association, and an assignment for the benefit of creditors, the holders of matured stock are not creditors, and can only share pro rata with the holders of unmatured stock after the payment of the creditors of the corporation."

See also on the same subject, Heinbokel v. National S. L. & B. Assn., 58 Minn. 340, 59 N. W. 1050; Towle v. American B. & L. Assn., 75 Fed. 938; Gibson v. Safety, 69 Ill. App. 485.

In an action brought to wind up an association of this kind, insolvent in the sense that it could not mature and pay its outstanding certificates, it was held: The rule of distribution in winding up a company of this sort is necessarily different from the order of payments made by it while a going concern. The dividend to each holder of a certificate will be in proportion to the amount paid in by him to the fund. Fogg v. Supreme Lodge, 159 Mass. 9, 33 N. E. 692. And it was said in a subsequent case, in reference to a contention that the endowment fund was a trust fund for the payment of matured certificates, that it was equally a trust fund for the benefit of all certificate holders. Williams v. United Assoc., 166 Mass. 450, 44 N. E. 342. Every member of such an association has an interest in the endowment fund and has contributed to it. To paraphrase from the opinion in People v. Security, 78 N. Y. 128, one who has paid his money to carry an endowment certificate to maturity has no better right and no greater equity to an endowment fund than has another, who has paid his money to carry a like certificate towards maturity.

We adopt the following rule where. an endowment association, organized under the provisions of G. S. 1894, §§ 3296–3316, has failed to accomplish the purposes of its organization, and for this

reason proceedings are had to wind up its affairs and distribute its assets among its members: The expenses incident to the proceeding are first to be paid, and then the general creditors, if any, in full; and, finally, the residue of the trust fund must be distributed pro rata among those whose claims are based upon certificates in the association, without regard to whether they have matured or not, for all classes of such certificates are equally meritorious. The claims of each are alike based upon their relation to the association as members thereof, and no one class is entitled to priority over the other. Appeal of Christian, 102 Pa. St. 184, 189.

"It would certainly be inequitable in a fraternal beneficial society, where mutuality is the basis of the contract, that a member whose certificate matured the day before the assignment should receive the maximum amount named therein, and that the member whose certificate would have matured the day after the assignment should receive comparatively nothing. In this distribution of an insolvent society of this character, the equitable maxim applies, 'Equality is equity.'" In re Tonti, 173 Pa. St. 464, 483, 34 Atl. 441.

The rule applied here is that adopted in Knutson v. Northwestern L. & B. Assn., supra, and what was there said as to the applicability of the principle of rescission is in point here.

Counsel for such of the appellants as held matured certificates rely upon the case of In re Educational End. Assn., 56 Minn. 171, 57 N. W. 463, as fully supporting their contention that they have priority of right to payment. It is true that language was therein used which tends to justify counsel's claim, but the point now presented was not then before the court. The association was there treated and considered as a concern able to meet all of its obligations, and to pay all of its liabilities. It was regarded as a solvent institution as to all of its members, and with respect to all classes of certificate holders. For this reason, what was said in reference to certificates which matured prior to the institution of the statutory proceedings to wind up its affairs and to dissolve the corporation is not in point here.

The order appealed from is affirmed.