# CASES DETERMINED

AT THE

## August Term, 1898.

---

In re Assignment of the Wisconsin Odd Fellows' Mutual Life Insurance Company: Kahn, Appellant, vs. Fulton, Assignee, Respondent.

*September 24 — October 11, 1898.*

*Mutual insurance company: Voluntary assignment: Rights of members in "reserve fund:" Claims for losses occurring after assignment: Dissolution.*

1. A mutual life insurance company had no capital stock and no accumulation of funds for the payment of losses except such as it secured by assessments after the happening of losses. Its charter provided, however, for a policy fund, to be used for the payment of death losses, and for a reserve fund, which was to be invested but was not set apart for any specific purpose and remained within the control of the directors, who were authorized to make transfers from it to the policy fund. The company made a voluntary assignment. *Held*, that the members had no vested rights capable of ascertainment in the reserve fund, but that it, with all the other property of the company, was liable to the payment of the death claims existing when the assignment was made.
2. A claim for a death loss occurring after the assignment cannot be enforced in the assignment proceedings.
3. The legal existence of the corporation was not terminated by the assignment.

Appeal from an order of the circuit court for Milwaukee county: D. H. Johnson, Circuit Judge. *Affirmed.*

The Wisconsin Odd Fellows' Mutual Life Insurance Com-

pany is a corporation organized under the laws of Wisconsin, and, as such, was authorized to issue certificates of insurance upon the lives of its members, under certain conditions and limitations contained in its charter and by-laws. The charter provided for two funds, known as the "policy fund" and the "reserve fund." The policy fund was made up of money received from assessments of members, sales of property of the company, and such sums of money as might be transferred to it by the board of directors. The reserve fund consisted of all admission fees, bequests to the company, and the excess of the income of this fund above the expenses of the company. This fund was to be kept invested, and the income applied to the payment of the expenses of the company, but "whenever, by reason of epidemic, calamity, or other extraordinary occurrence, there shall be an unusual number of death losses," the board of directors might transfer from this fund, to the policy fund, such amount for the payment of death losses as they deemed expedient. Whenever the amount of the policy fund was insufficient to pay unpaid losses, the secretary was authorized to levy an assessment upon each member to replenish the same, and every certificate of membership became void if the assured failed to pay such assessments within sixty days.

The company became involved and unable to meet its maturing obligations, and on February 11, 1897, made a voluntary assignment to *John L. Fulton.* At that time one Joseph Kahn held two certificates of membership, of $1,000 each, in which appellant was named as beneficiary, and upon which Kahn had paid all dues and assessments theretofore made. On February 23, 1898, a little more than one year after such assignment, Kahn died. Proofs of death were made to the company, and appellant filed a claim for the amount of each certificate with the assignee. Objections were filed to the claim, on the ground that at the date of making the assignment the assignor was not in any manner

indebted to the claimant. The matter was heard before the circuit judge, and an order was entered disallowing the claim as a debt against the estate of the assignor in the hands of the assignee, without prejudice to the right of the claimant to participate in the division of any surplus that might remain in the hands of the assignee, after the payment of all debts of the company proved, and the expenses of the assignment. Exceptions to this order were duly filed, and the claimant takes this appeal.

The cause was submitted for the appellant on the brief of *Wickham & Furr.* They contended, *inter alia,* that it is the duty of a life insurance company to continue its business. Where it becomes insolvent and discontinues such business, such act constitutes a breach of its contract of insurance, and its policy holders immediately thereupon become creditors and entitled to recover the damages sustained by reason of such breach, the value of which is the value of the policy had the company remained solvent. *People v. Security L. I. & A. Co.* 78 N. Y. 114; *Att'y Gen. v. Guardian Mut. L. Ins. Co.* 82 id. 337; *Barney v. Dudley,* 42 Kan. 212; *People v. Empire Mut. L. Ins. Co.* 92 N. Y. 106; *Relfe v. Columbia L. Ins. Co.* 76 Mo. 594; Cooke, Life Ins. § 132; *Carr v. Hamilton,* 129 U. S. 252; *Universal L. Ins. Co. v. Binford,* 76 Va. 103; *McDonnell v. Ala. Gold L. Ins. Co.* 85 Ala. 401; *New York L. Ins. Co. v. Statham,* 93 U. S. 24. In order to determine the value of a policy in such a case, the condition of health of the insured and his expectancy of life is a proper and important question to be considered. *Att'y Gen. v. Guardian Mut. L. Ins. Co.* 82 N. Y. 337; *Barney v. Dudley,* 42 Kan. 212; *People v. Security L. I. & A. Co.* 78 N. Y. 114; *Holdick's Case,* L. R. 14 Eq. 72, and note; *Craig's Case,* 9 id. 711; *People v. Knickerbocker L. Ins. Co.* 34 Hun, 476; *Att'y Gen. v. Continental L. Ins. Co.* 88 N. Y. 77. The rule in such cases is the same, whether the company be a mutual life insurance company or otherwise. *Att'y Gen. v. Guard-*

*ian Mut. L. Ins. Co.* 82 N. Y. 336; *Carr v. Hamilton,* 129 U. S. 252; *People v. Empire Mut. L. Ins. Co.* 92 N. Y. 106; *Carr v. Union Mut. F. Ins. Co.* 33 Mo. App. 291; *Smith v. St. Louis Mut. L. Ins. Co.* 2 Tenn. Ch. 727. A mutual life insurance company is subject to the same rules of law as apply to other life insurance companies, except so far as those rules are modified by the charter or by-laws of the company. *McCorkle v. Texas B. Asso.* 71 Tex. 152; *Cohen v. N. Y. Mut. L. Ins. Co.* 50 N. Y. 610.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *George Lines,* of counsel, and oral argument by *Mr. Lines.* They argued, among other things, that the rights of all parties in the funds of the corporation were fixed at the time those funds came under the control of the court. Only those claims which existed as debts against the assignor or insolvent at the time of the assignment are entitled to participate. Burrill, Assignments, § 384; 3 Am. & Eng. Ency. of Law (2d ed.), 138, 139; *People v. Commercial A. L. Ins. Co.* 17 App. Div. (N. Y.), 376; *Miller's Appeal,* 35 Pa. St. 481; *Dean & Son's Appeal,* 98 id. 101; *Burdon v. Mass. Safety F. Asso.* 147 Mass. 360; *Fogg v. United Order of the Golden Lion,* 159 id. 9; *In re Educational E. Asso.* 56 Minn. 171; *In re Equitable R. F. L. Asso.* 131 N. Y. 354; *People ex rel. Att'y Gen. v. Life & R. Asso.* 150 id. 94; *People v. Commercial A. L. Asso.* 154 id. 95. Members of the company living at the date of the assignment, or their representatives, have no claim upon its funds until the payment of all death losses arising prior thereto. 2 Bacon, Ben. Soc. § 479; *Dewey v. Davis,* 82 Wis. 500; *In re Equitable R. F. L. Asso.* 131 N. Y. 354; *Failey v. Fee,* 83 Md. 83, 32 L. R. A. 311; *Mayer v. Att'y Gen.* 32 N. J. Eq. 815; *Vanatta v. N. J. Mut. L. Ins. Co.* 31 id. 15; *Stamm v. N. W. M. B. Asso.* 65 Mich. 317; *People ex rel. Att'y Gen. v. Life & R. Asso.* 150 N. Y. 94; *Gray v. Merriman,* 57 N. W. Rep. 463; *In re Educational E. Asso.* 56 Minn. 171; *Bal-*

*timore & O. R. Co. v. B. & O. E. R. Asso.* 77 Md. 566; *Dean & Son's Appeal,* 98 Pa. St. 101; *Comm. v. Mass. Mut. F. Ins. Co.* 112 Mass. 116; *S. C.* 119 id. 45; *Doane v. Millville Mut. M. & F. Ins. Co.* 43 N. J. Eq. 522. Under the contract of membership and especially by reason of their liability to contribute to the payment of its losses, the interest of the members of the company in its funds is similar to that of stockholders in the funds of a stock corporation, or of partners in the funds of a partnership, viz.: a right to share in the surplus after the payment of debts. 2 Bacon, Ben. Soc. § 479; *Mayer v. Att'y Gen.* 32 N. J. Eq. 815; *Failey v. Fee,* 83 Md. 83, 32 L. R. A. 311; *Vanatta v. N. J. Mut. L. Ins. Co.* 31 N. J. Eq. 15.

BARDEEN, J. A corporation may make an assignment for the benefit of its creditors to the same extent and in the same manner as a natural person, unless restricted by its charter or some statutory provision. *Garden City B. & T. Co. v. Geilfuss,* 86 Wis. 612; Burrill, Assignments, § 45.

While there is some difference of opinion in the courts, the better rule, and the one sustained by the great weight of authority, is that an assignment of all the corporate property does not affect the corporate franchises, and does not dissolve the corporation. Burrill, Assignments, § 45.

By the deed of assignment of the insurance company, the equitable ownership of all of the assigned property passed to the creditors, and every creditor who filed his claim was entitled to his just share therein. Ordinarily, the rights of parties to the assigned property are fixed as of the date of the assignment. Burrill, Assignments, § 384; *Jordan's Appeal,* 107 Pa. St. 75; *Rome Exch. Bank v. Eames,* 4 Abb. Dec. 83; *In re Risley,* 10 Daly, 44.

At the time this assignment was made, Kahn was a member of the company, holding two certificates, upon which he had paid all assessments or calls made by the secretary. He

lived for more than a year thereafter. During this period he was not a creditor of the company. The deed of assignment conveyed the title to all the money and tangible property of the company to the assignee, and carried with it as well all its choses in action. It included all the money in the policy fund, as well as the right to collect all sums due on assessments for death losses, as is fully set out in *Fulton v. Stevens*, 99 Wis. 307. It also covered all property and money in the reserve fund. It is urged that, inasmuch as sec. 13 of the charter [ch. 1, Laws of 1887] provides for two funds,— the " policy fund " and the " reserve fund," the one to be used for the payment of death losses and the other to be invested as a permanent fund,— the members of the company obtained vested rights therein capable of being ascertained and valued, and that, when the company becomes insolvent, each policy holder becomes a creditor of the company. This contention is based upon a false premise. While it is true that sec. 13 provides that the reserve fund shall be safely invested by the board of directors, it is nowhere provided that it shall be set apart for any special purpose or devoted to any given object, nor was it to inure to the benefit of any particular class. On the contrary, it remains within the control of the board of directors, who are given express authority to transfer from this fund to the policy fund " such amount for the payment of death losses as said board may deem expedient " in the event of epidemic, calamity, or other extraordinary occurrence. In absence of some express pledge entering into the contract of insurance, this fund, as well as all property of the company, is liable to the payment of the death claims in existence when the assignment was made. The claim filed is for indemnity under the certificates of membership in which claimant was named as beneficiary, and not to secure any surplus Kahn might have been entitled to as a member. This right to any surplus over and above the *bona fide* debts of the company cannot

be enforced in the assignment proceedings. The surplus, if any, under the law, and under the deed of assignment, must be turned back to the company. Its legal existence was not terminated by the assignment. It may continue to exercise its franchises, and go on with its business, when the trust has been fully administered. The situation is therefore very unlike the case where a direct proceeding has been brought to dissolve the corporation.

Nearly, if not all, the cases cited to support the appellant's position, are cases of stock companies or mutual companies where fixed and definite premium charges were collected, and where a certain fund was set apart for a specific purpose, and where the question of distribution has arisen in proceedings to wind up the corporation. For a discussion of the rights of claimants under such circumstances, see *People ex rel. Att'y Gen. v. Life & Reserve Asso.* 150 N. Y. 94; *People v. Commercial Alliance L. Ins. Co.* 154 N. Y. 95; *Burdon v. Mass. S. Asso.* 147 Mass. 360; *Dean & Son's Appeal,* 98 Pa. St. 101; *Fogg v. Supreme Lodge U. O. G. L.* 159 Mass. 9; *In re Educational Endowment Asso.* 56 Minn. 171; *In re Equitable R. F. L. Asso.* 131 N. Y. 355.

Under the scheme set out in the charter and by-laws of this company, it had no capital stock, and no accumulation of funds for the payment of losses except such as it secured by assessment of its members after happening of losses. The contract liability of members to assessment stands as the security of the assured in place of capital stock and reserve accumulations; and instead of fixed premiums, payable at stated intervals and including a reserve element, there are assessments leviable only after losses occur. It is therefore manifest that certificates of membership in such a company possess none of the attributes or elements which give to ordinary life insurance policies what is called an equitable value. The status of the creditors of the corporation must be fixed as of the date of the assignment; that is to say, there

must be a liability existing at the time the assignment is made, which may ripen into a debt provable under the law. At that date the claimant had no rights which she could enforce, either actual or contingent.

We therefore conclude that the claim the appellant is pressing is not a debt, within the meaning of the law, which she can file and enforce in this proceeding.

*By the Court.*— The order of the circuit court is affirmed.

Authorities as to the distribution of the assets of insolvent insurance companies may be found in an extensive note to *Boston & A. R. Co. v. Mercantile T. & B. Co.* (82 Md. 535), in 38 L. R. A. 97.— REP.

