## CALKINS *v.* GREEN.

1. BENEFIT SOCIETIES—SETTLEMENTS—ILLEGALITY OF CONTRACTS.
    Where the certificate of a member of a mutual benefit associa-
    tion has been matured, fully paid, and settlement had with
    the company according to the terms of the certificate, of
    which all the members are fully aware, such settlement will
    not be set aside in a suit by a receiver of the company, asking
    relief on the ground that the scheme of the association was
    impracticable and illegal, and that all moneys paid in under
    the contracts should constitute a trust fund, to be distributed
    *pro rata* among the members.[1]

2. SETTLEMENTS—RECEIVERS.
    Settlements between debtors and creditors, made in good faith
    and in accordance with the terms of their contracts, cannot
    be set aside by a receiver.

Appeal from Wayne; Hosmer, J.  Submitted January
30, 1902.  (Docket No. 121.)  Decided March 18, 1902.

Bill by Charles W. Calkins, receiver of the Supreme
Assembly of the National Dotare, against William H.
Green, Jr., and Annie Green, to reinstate and foreclose
a mortgage.  From a decree dismissing the bill, complain-
ant appeals.  Affirmed.

This is another suit involving the rights and obligations
of the members of the Supreme Assembly of the National
Dotare.  Its organization, illegal methods of doing busi-
ness, and the proceedings for the appointment of a receiver
are sufficiently stated in *Calkins* v. *Bump*, 120 Mich. 335
(79 N. W. 491), and need not be restated here.  The further
facts applicable to this case are well stated by counsel for
the complainant, are not disputed by counsel for the de-
fendants, and are as follows:

The National Dotare issued to its members certificates
varying in amounts from $200 to $1,200, payable six years

[1] See, also, *Calkins* v. *Beekman*, 127 Mich. 249 (86 N. W. 836).

after the date of issue. There were 2,672 certificates issued. The members paid monthly assessments of 50 cents for each $100 of the face value of their certificates. So that, according to the terms of the certificates, the corporation agreed to pay $1,200 to each member who would contribute to its funds $432 in 72 monthly assessments, of $6 each. Prior to June, 1894, 10 per cent., and after that date 20 per cent., of the funds collected by assessments, were used to defray the running expenses of the organization. The receipts not used to defray the running expenses were placed in a fund designated as the "Guaranty Reserve Fund," which, according to the constitution of the order, was set aside to be used in paying certificates at maturity, and was to be invested in bonds and mortgages. The losses resulting to the fund as a result of unsafe investments were greater than the interest earned. In 1894 the organization began paying surrender values on certificates; i. e., purchasing them for less than their face value, but for more than had been paid in on assessments on them. March 1, 1896, the first issue of certificates matured.

The result of these operations was that the organization became unable to pay to its remaining certificate holders more than one-third of the amount they had contributed to the fund. On March 18, 1896, there had been paid out in surrender values and on matured certificates more than $108,000 to 225 certificate holders, who had contributed to the fund less than $43,000; and on that date there remained in the fund less than $85,000, to be distributed among 2,064 certificate holders, who had contributed more than $150,000 thereto. Two hundred and twenty-five certificate holders had received $2.50 for every dollar contributed, and there was enough left to pay the remaining 2,064 members only 56 cents for each dollar contributed. By April 6, 1896, there remained less than $51,000 to be distributed among members who had contributed $150,000 to the fund, and had received nothing in return.

April 1, 1890, there was issued to William H. Green, Jr., a benefit certificate of the face value of $1,200. March 30, 1891, William H. Green, Jr., and Annie Green, his wife, borrowed from the reserve fund $1,200, and gave a mortgage on real estate to secure payment of the loan. Monthly assessments of $6 each were paid on the certificate, and interest at 7 per cent. on the loan. The mortgage loan became due March 30, 1896, and the certificate matured April 1, 1896. The warrant or check received in payment of the certificate was returned to pay the principal of the mortgage loan on April 6, 1896. There was paid in in assessments on the certificate $408, of which $359.40 was placed in the reserve fund. The defendant Green received from the reserve fund $3.33 for every dollar he had contributed thereto, when, on a *pro rata* distribution of the fund among the contributors thereto, he would have received only 34 cents for each dollar contributed. By canceling his mortgage with his certificate, he received nearly 10 times as much as he would have received if the fund had been distributed among all the contributors, who had received nothing from the fund, *pro rata* their respective contributions thereto.

The complainant receiver filed this bill, setting up the above facts, the invalidity of the certificate, the injury to others beneficially interested in said fund, and prayed that such mortgage might be reinstated and foreclosed. Decree was entered for the defendants.

*Frederick W. Stevens*, for complainant.

*Corliss, Andrus & Leete* (*John J. Speed*, of counsel), for defendants.

GRANT, J. (*after stating the facts*). The learned counsel for complainant states the theory upon which complainant seeks a decree as follows:

"A large number of persons put money into a common fund. The purposes for which it was paid are illegal. The fund became a trust fund, in which every member

who contributed thereto became beneficially interested *pro rata* the amount of his contribution. Some put in more than others. Equity requires that there should be an adjustment among all the contributors on a fair accounting. A receiver has been appointed to ·make the proper and equitable distribution. In order to do this, there should be returned to him all amounts which have been taken from the fund in violation of the trust. The holders of matured certificates are not entitled to be paid in preference to other certificate holders."

In support of this theory he cites *Burton* v. *Schildbach*, 45 Mich. 504 (8 N. W. 497); *Stamm* v. *Benefit Association*, 65 Mich. 317 (32 N. W. 710); *Calkins* v. *Bump*, 120 Mich. 335 (79 N. W. 491); *In re Youths Temple of Honor*, 73 Minn. 319 (76 N. W. 59).

All these cases involved the rights and liabilities of the membership of the corporations at the time of dissolution and the appointment of receivers. They relate to the distribution of the assets of the corporations as they existed at that time. Neither one is authority for setting aside settlements with and payments to members which have been made in accordance with the terms of their contracts. It may be very properly said that the scheme to mature these certificates in six years was impracticable, and that it could not be maintained for any length of time; but there was nothing morally wrong in the proposition. All parties acted in good faith. Mr. Green's certificate was matured and the company paid it while it was a going concern, and more than a year before proceedings were taken to wind up the affairs of the company. There was no fraud in the settlement. Mr. Green had performed his contract. The corporation also performed it, by paying the money. The fact that it was paid by canceling a mortgage is of no consequence. The same principle which would now reinstate the mortgage would also compel Mr. Green to repay the money. Under complainant's theory (and we presume this is a test case to establish the rule), every person who has once been a member, and received his money upon his matured certificate, can be compelled

to repay it into the common fund. The statute of limitations, in that event, would be the only bar to recovery from members who have been paid.

Settlements between debtors and creditors, made in good faith and in accordance with the terms of their contracts, cannot be set aside by a receiver. *Hyde* v. *Lynde*, 4 N. Y. 387. The learned counsel concedes this rule, but maintains that it is inapplicable to cases of this character, where the contracts are *ultra vires*, and the funds paid in, therefore, constitute a trust fund to be distributed among the members interested. I do not find that this point has been raised in any of the cases arising out of these mutual benefit associations. Certainly the corporation itself, when a going concern, could not have sued the defendant to recover payments made by the express authority of its articles of association, and contracts based thereon. The members of the corporation deliberately entered into these contracts, hoping to make large returns. Every one undoubtedly expected to make the same profit that Mr. Green did. In six years he invested in his certificate $408, and received back therefor $1,200. Every member knew that this money would be paid to each certificate holder as his certificate matured. Each member made his contract with his eyes wide open. Each, upon reflection, would undoubtedly have concluded that the scheme was wholly impracticable and must fail. Its members are not, therefore, in position to appeal very strenuously to the conscience of a court of equity for relief. Mr. Green was paid just as they agreed he should be paid. If the company itself could not sue Mr. Green to recover the money back, we think that, for the same reason, the receiver cannot do it. If no right of action existed in the corporation against Mr. Green, certainly it was not a part of the assets of which, under the decree of the court, he was appointed receiver.

The decree is affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.