JOHN W. HANCE ET AL. v. THE TITTABAWASSEE BOOM COMPANY.

*Logs and logging—Sale—Retention of title until payment— Waiver of condition by vendor—Log-mark—Trover and conversion.*

Certain log-owners sold to an agent a quantity of logs, contracting with him *personally*, but with knowledge of the agency, and marked the logs with the log-mark of the principal, and delivered them in the river, where they were mixed with other logs purchased and marked in like manner, of which fact they were ignorant. The principal paid the agent in full, after which the vendors made like settlement with him, taking his acceptance for the balance due, which was taken up by his note, which they discounted and paid, and surrendered to him. A boom company, to which the logs had been delivered, delivered to the principal an amount in excess of that put in by said log-owners, who demanded the remaining logs, being less in quantity than they had put in, which demand was refused unless a bond of indemnity was given, which was not done, but on its execution by the principal the logs were delivered to him; whereupon the log-owners sued the boom company for the value of the *last*

delivery, claiming a special property, measured by the balance due them on the note, under a clause in the original contract retaining the title to the logs sold until paid for. In affirming the action of the trial court in directing a verdict for the boom company, the Court held:

1. To authorize a recovery in an action of trover, the plaintiff must prove his ownership, absolute or qualified, of the property described in his declaration, its conversion by the defendant, and its value at time of conversion.

2. The statutes of this State recognize log-marks as *indicia* of ownership, and make their altering or effacing highly penal.

3. Vendors who have sold logs to an agent, contracting with him *personally* upon the strength of his *personal* responsibility, with knowledge that he was purchasing for his principal, may well be considered as waiving a clause in the contract retaining the title to the logs until paid for, by marking the logs with the *known* log-mark of the principal, such act being inconsistent with a continued claim of title.

Error to Saginaw. (Gage, J.) Argued April 20, 1888. Decided May 11, 1888.

Trover. Plaintiffs bring error. Affirmed. The facts are stated in the opinion, and summarized as a part of headnote 1.

*Wisner & Draper,* for appellants.

*John Moore* and *Holmes & Collins,* for defendant.

CHAMPLIN, J. In December, 1882, Charles Sterling & Co., of which firm the plaintiffs are the surviving partners, sold to one L. M. Bailey a certain quantity of white pine saw-logs, estimated at two million feet, more or less, then being cut from land of plaintiffs, at the price of $8 a thousand feet, payments to be made as follows: Two hundred dollars down, seven dollars per thousand feet as fast as banked, and the remaining one dollar a thousand when the logs were drawn into Chippewa river by the plaintiffs. It was agreed that—

"The title, possession, and ownership of said logs to be and remain in first parties until full purchase price is paid."

The contract was in writing, and was signed by Charles Sterling & Co. and L. M. Bailey. These logs were being bought by Bailey for S. G. M. Gates on commission, and Charles Sterling & Co. knew, when they entered into the contract of sale, that Bailey was making the purchase for Gates. They were furnished with the logging mark of Gates, being the letters "O. O. W.," which they placed on all the logs before putting them afloat in the Chippewa river. When they placed this mark upon the logs, they knew it was the mark of Mr. Gates, and indicated that logs so marked belonged to him.

Mr. Bailey also bought logs of other parties, at or near the same time above stated, which were marked with the same mark, and were put afloat, and were run down and into the defendant's boom during the spring and summer of 1883, which was the same season in which the logs purchased of plaintiffs were run into the boom of defendant. These logs were of the same average quality as those purchased from plaintiffs. The plaintiffs did not know that other logs bearing the log-mark "O. O. W." were being put into the river by Bailey for Gates.

The whole quantity of logs purchased by Bailey for Gates, and which were marked as above, was 2,118,740 feet, of which 1,434,032 feet were purchased from Charles Sterling & Co.

On March 30, 1883, Gates settled with Bailey, and paid him in full the balance his due for logs purchased by him for Gates.

On May 18, 1883, the firm of Sterling & Co. had a settlement with Bailey, and he was found to be owing them, on said purchase, $1,472.64. For this balance he gave his check for $72.64, and his acceptance at 30 days for $1,400. This was not paid at maturity, and was extended by a note for the

amount, which was discounted, and went to protest, and was paid by plaintiffs, and was surrendered up to Bailey just prior to the commencement of this suit.

The defendant is a corporation organized under the laws of this State, and engaged in booming, storing, assorting, rafting, and delivering logs at the several saw-mills on Saginaw river below their boom, for which it charges a certain price per thousand. It was notified by Gates that he was the owner of the logs marked "C. O. W.," and requested to deliver the same at a certain saw-mill. It did deliver to Gates, during the season of 1883, 1,751,040 feet, and there was left in defendant's boom, of the logs so marked, at the end of the season of 1883, or had come into the boom in 1884, 367,700 feet; and of these it had delivered to Gates, prior to May 15, 1884, 78,000 feet.

On May 15, 1884, the plaintiffs sent to the defendant a notice, which reads as follows:

"EAST SAGINAW, MICH., May 15, 1884.
" THE TITTABAWASSEE BOOM CO.,
"Saginaw:
" We hereby notify you that we own the pine saw-logs now in your possession marked 'C. O. W.,' and we forbid you delivering any of such logs to any other person or persons. The logs herein referred to were put afloat in Salt river in the spring of 1883.   On receiving notice from you, we will give you directions as to where you can deliver said logs.
"CHAS. STERLING & Co.,
"Mt. Pleasant, Mich.
"By WISNER & DRAPER, their Attorneys.
"P. S.   You can notify our attorneys."

The notice was served upon defendant by one of the plaintiffs, who at the same time informed the officer in charge of the business who composed the firm of Charles Sterling & Co., and ascertained from him how many of the logs marked "C. O. W." had been delivered to Gates, and told him that the firm owned the logs, and desired the boom company to

retain them for the firm. He was informed that the company would not deliver the logs to Mr. Gates or anybody else until they gave a bond to the boom company. Afterwards Gates gave the defendant a bond of indemnity, and it then delivered the balance of the "C. O. W." logs to him, amounting to 289,700 feet.

Plaintiffs bring this action of trover to recover from defendant the value of the logs so delivered after the service of the notice of date May 15, 1884. The contention of the plaintiffs is that, under these facts, they were entitled to a verdict against defendant for the value of the logs, at eight dollars a thousand, up to the amount remaining due from Bailey upon the contract.

The court below took the case from the jury by directing a verdict for defendant. This is assigned as error.

It will be observed that defendant had received in its boom and delivered to Gates during the year 1883, and up to May 15, 1884, nearly 400,000 feet more of the "C. O. W." logs than the total amount sold to Bailey by Charles Sterling & Co., and that there remained in the boom at that date 289,700 feet. To authorize a recovery in an action of trover, the plaintiff must prove his ownership, absolute or qualified, of the property described in his declaration, the conversion thereof by defendant, and the value of such property at the time of conversion. The testimony wholly failed to show any title or right to possession whatever in the plaintiffs to the logs in defendant's possession on May 15, 1884, marked "C. O. W."

This is not a case of the application of the maxim, *omnia præsumuntur contra spoliatorem.* Here there was no unlawful commingling of goods by the defendant, nor by Bailey or Gates. It was not, therefore, the privilege of plaintiffs to lay claim to the whole quantity of logs bearing that mark. If they did not know before, they were informed, when they served the notice upon the boom company, of the fact that

a large quantity, exceeding by many hundred thousand feet the quantity sold by them to Bailey, had been received into defendant's boom during the year 1883 bearing the log-mark "C. O. W.," and had been delivered to Mr. Gates. They inquired, and were informed of the exact amount, and also of the quantity left in the possession of the boom company. These logs that were remaining in the possession of the defendant they were unable to identify as being the logs they had sold to Bailey.

If it be conceded that all the logs were of a like average as to quality and value, and became mingled without fault, and that they had a right to take from the common mass a quantity proportionate as the quantity sold by them bore to the whole quantity so marked, they would not be entitled to the whole quantity remaining at the boom on May 15, 1884, but only to a proportionate share.

Under the circumstances detailed in the testimony, the firm of Charles Sterling & Co. dealt with Mr. Bailey upon the strength of his personal responsibility. Knowing the principal, they entered into a personal contract with the agent; and, although they introduced a clause in the contract that the title to the logs should remain in them until the logs were fully paid for, yet they took no means or precautions whereby such clause could be made operative for their protection, by the insertion of a stipulation that the logs should be marked with the log-mark of Charles Sterling & Co., or that the mark "C. O. W." should be used to designate this particular lot of logs, and no other.

The contract is silent as to marks which should be placed upon the logs. The statutes of the State recognize log-marks as *indicia* of ownership, and the altering or effacing thereof is made highly penal. When the plaintiffs, after selling these logs to Bailey with a knowledge that they were purchased by him for Mr. Gates, marked the logs with Mr. Gates' log-mark, knowing it to be his, they may well be con-

sidered as having waived that clause of the contract above referred to. The act was certainly inconsistent with a continued claim of title.

No demand was ever made of the defendant for a delivery of the logs to plaintiffs, except that implied in the notice of May 15, and this claimed the whole quantity then in the possession of the defendant; and to this claim the defendant could not comply without rendering itself liable to Gates for a portion, at least, of the logs. The defendant, however, retained the logs in its possession from May 15 until fall. The plaintiffs gave no further directions, offered no bond of indemnity, made no further demand, but remained passive until the logs had been delivered to Gates, and then brought this action.

The action of trover is not one of an equitable nature, and we cannot in this action say that plaintiffs are entitled to and own a *pro rata* share of all the logs bearing that mark which were put afloat that year, and became mingled with each other.

We think the court was right in directing a verdict for the defendant, and the judgment is affirmed.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred. CAMPBELL, J., did not sit.