CALKINS *v.* BUMP.

1. BENEFIT SOCIETIES—DISSOLUTION.

For a fraternal benefit society, organized under 1 How. Stat. §§ 3949–3955, to call in outstanding certificates, cancel the same, discharge existing indebtedness, and proceed to issue certificates not authorized by the organic act, will not work a dissolution of the original corporation, since corporations can be dissolved by their own act only by proceedings under 2 How. Stat. chap. 282.

2. SAME—CORPORATE EXISTENCE—ESTOPPEL TO DENY.

Where an assignment of mortgages, executed to a benefit association duly incorporated, is made under the corporate name and seal, the assignee is estopped to claim that, at the time of the assignment, the corporation had been abandoned, and succeeded by a voluntary association.

| | |
|---|---|
| 120 | 335 |
| d127 | 251 |
| e127 | 252 |
| 120 | 335 |
| s79NW | 491 |
| 130 | 57 |
| d130 | 60 |
| 120 | 335 |
| f134 | 178 |
| 120 | 335 |
| 139 | 2 50 |

3. SAME—POWERS—ENDOWMENT INSURANCE.

A mutual benefit society, organized under 1 How. Stat. §§ 3949-3955, is not authorized to incorporate in its certificates of membership a provision for the payment of an endowment at a fixed time.

4. SAME—TRUST FUND—DISTRIBUTION.

Members of a mutual benefit association contributed to a common fund, the creation of which was unauthorized by law. The fund was invested in securities, which the association assigned to a trustee for the benefit of certain members, whose certificates had matured. *Held,* that a decree setting aside the assignment, and ordering the transfer of the securities to a receiver for distribution among all the members, was proper, since the fund was a trust fund, in which every member who contributed was beneficially interested *pro rata* to the amount of his contribution.

5. TRUSTS AND TRUSTEES—ACCOUNTING—DEPRECIATED SECURITY.

A trustee is not chargeable with the face value of a mortgage which he discharged for less than such value, where he realized on it the full value of the mortgaged property.

6. SAME—INTEREST.

A trustee who, under mistake of law, pays money to the wrong party, or holds it without investment, awaiting the determination of court as to whom it should be paid, is not chargeable with interest thereon.[1]

Cross-appeals from Kent; Grove, J. Submitted April 18, 1899. Decided June 5, 1899.

Bill by Charles W. Calkins, receiver of the Supreme Assembly of the National Dotare, against Charles M. Bump, trustee, to recover possession of certain assets of the society. From the decree rendered, both parties appeal. Affirmed.

*Crane, Norris & Stevens,* for complainant.

*Joseph W. Smith (Lyon & Pierce,* of counsel), for defendant.

Long, J. The complainant is the receiver of the

---

[1] The liability of trustees for compound interest is considered in an extensive note to *Re Ricker,* (Mont.) 29 L. R. A. 622.

Supreme Assembly of the National Dotare, being appointed by the circuit court, in chancery, of Kent county. The supreme assembly of this order was organized as a corporation some time in the year 1889, under the provisions of Act No. 104, Laws of 1869, as amended by various acts, now standing as sections 3949–3955, 1 How. Stat. It is a secret or fraternal society, lodge, or council, under the supervision of a grand or supreme body, securing members through the lodge system exclusively. By the general laws of the association, it was authorized to establish and maintain, by means of assessments on its members, a benefit fund, from which a sum not exceeding $1,200 should be paid to any member of the order who had contributed to said benefit fund for six consecutive years, upon the surrender of the benefit certificate, etc. A guaranty reserve fund was provided for, and this fund was to be invested in bonds and mortgages.

It is contended by complainant that the corporation was not authorized to engage in the business of what is commonly known as "endowment insurance," or the payment of a specified sum of money after the arrival of a certain stated time, and was not authorized to issue policies or certificates, and was not authorized to make contracts with its members or others, whereby it engaged to pay to its members or others any specified sum at the arrival of a certain and fixed period, as such policies, certificates, and contracts were beyond the power of the corporation to make, but that, after the organization was formed, it issued to a large number of persons what were termed "benefit certificates," whereby, among other things, it undertook to engage to pay a specified sum at the expiration of six years from the date of the respective certificates, or, should the member, after 90 days of continuous membership, die before the expiration of six years, then the organization agreed to pay to the member's wife or other dependent relative a sum not exceeding the amount stated in the certificate, in lieu of the payment of

the specified sum at the expiration of the six years; said certificates being conditioned upon the payment by the holder of certain assessments, dues, and demands.

It is shown that the supreme assembly is the owner of several thousand dollars' worth of notes, mortgages, and other securities payable to it, and that on or about January 11, 1897, certain persons, claiming to be the officers of the supreme assembly, executed and delivered to the defendant assignments, without any consideration whatever, of a large number of such notes and mortgages; that he now claims to hold them as trustee for various persons who are the holders of benefit certificates, and who claim the right to be paid out of the proceeds of these notes and mortgages the full amount of their certificates, as though they were valid obligations. It is contended that, at the time these assignments of mortgages and notes were made to the defendant, the corporation was hopelessly insolvent. It is shown that there are upwards of 1,000 members of the organization, who have paid into the treasury large sums of money on account of assessments upon benefit certificates held by them, and it is contended that they are entitled to share in the distribution of the fund *pro rata* with all other creditors. The complainant claims that he is now entitled to the possession of these notes and mortgages for the purpose of such distribution.

The complainant's claims are largely admitted by the defendant. He admits that he has these notes and mortgages, but denies that the action of the officers of the organization in assigning and transferring them to him was unlawful, and claims that the officers were fully authorized to use the reserve fund of said order, of which these notes and mortgages were a part, to pay claims that had fully matured, or to use said reserve fund in such manner as to secure the stability of the order; that they were warranted in doing so in the present case, as these claims were due; and that the existence of the organization was threatened, as suits were to be brought unless

settlements were made with the *cestuis que trustent.*
Defendant denies that the order was insolvent at the time
these assignments were made.   In reference to the Louise
Mead note and mortgage, which is claimed by the com-
plainant, the defendant claims that it was settled by
him for the sum of $2,500, and the greater part of the
proceeds distributed *pro rata* among the *cestuis que
trustent* of the defendant before the injunction was served;
also that a quitclaim deed was taken from Eliza Mitchell
for her equity, by the direction of the court, at an outlay
of $60; that the defendant has not been able to sell the
property for $400, and that a tax claim has been acquired
against the property represented, for which the defendant
must pay $365; and that the remainder of the notes and
mortgages are not worth their face value.

In a supplemental answer by the defendant, it is claimed
that the supreme assembly mentioned in the bill is not the
same organization from which he obtained the securities;
that in the early part of 1890 the officers of the supreme
assembly, of which the complainant was appointed re-
ceiver, called in all the benefit certificates issued by it,
canceled the same, discharged all the indebtedness, and
thereupon a voluntary association was organized for the
protection and benefit of its members, under the title of
"Supreme Assembly of the National Dotare;" that the
securities claimed by complainant were obtained from this
new organization.

The court below, on March 1, 1898, entered a decree
finding that the complainant was entitled to recover from
the defendant the notes and mortgages, and setting aside
the assignments thereof; that the corporation was insol-
vent, and the notes and mortgages were a part of the trust
fund held by the corporation for the benefit of all its mem-
bers and certificate holders.   The defendant appeals from
this part of the decree.   The court also, in the same
decree, directed that an accounting should be had, and
referred the matter to a circuit court commissioner for
that purpose.   The court fixed the basis of such account-
ing as follows:

"The defendant to be charged with the face value of all of said notes and mortgages, and with all interest and other sums, not principal, collected by him upon any and all of said notes and mortgages; defendant to be credited with the face value of all such mortgages as he shall turn over to the complainant pursuant to this decree, and with the proceeds of the Eliza Mitchell mortgage; and defendant to be further credited with all sums paid by him pursuant to the orders of this court, and with all sums paid by him for taxes, insurance premiums on the mortgaged premises, or other sums paid to protect the securities from paramount liens; and, if the defendant shall claim other credits on said account, said commissioner shall report the same, with the testimony and his opinion thereon," etc.

The commissioner reported that, as to the Mitchell mortgage, the defendant should be charged with $400 received, and credited by the following amounts:

| | |
|---|---:|
| Paid for equity of redemption | $60 00 |
| "    " insurance | 8 75 |
| "    " taxes | 47 35 |
| "    " tax history | 50 |
| "    " services on transfer | 10 00 |
| | $126 60 |

—Leaving a balance with which defendant is charged of $273.40.

As to the Louise Mead mortgage, the commissioner found:

| | | |
|---|---:|---:|
| That the defendant should be charged with the amount realized of | | $2,500 00 |
| And that he should be credited thereon as follows: | | |
| For recording assignments of mortgages | $7 15 | |
| For attorney's retainer to advise defendant | 50 00 | |
| For attorney's time, etc., at Alpena | 32 00 | |
| For attorney's fees in Bump v. Bloecker | 53 80 | |
| For attorney's fees in Eddy v. Bump | 24 00 | |
| For attorney's fees in Thielman v. Bump | 22 00 | |
| For typewriting | 3 00 | |
| For stamps and stationery | 1 85 | |
| For publishing foreclosure notice | 24 50 | |
| For sheriff and register fee in Bump v. Thielman | 2 45 | |
| | | 220 75 |
| Leaving balance charged against defendant on that mortgage of | | $2,279 25 |
| And making a total charge against defendant on these two mortgages of | | $2,552 65 |

The court confirmed this report, so far as it charged the defendant with this $2,552.65, but held the report erroneous in not charging him with the sum of $8,900 on the following account:

For face of Burley mortgage ........................................ $1,600
"    "    "  Gillen      "    ................................................    500
"    "    "  Godhardt    "    ............................................    300
"    "    "  Bloecker    "    ............................................  3,000
"    "    "  Mather      "    ............................................  1,500
"    "    "  Maczkowski  "    ............................................    300
"    "    "  Eddy        "    ............................................  1,200
"    "    "  Tifft       "    ............................................    500

Said mortgages were ordered to be assigned by defendant to the complainant within 10 days by the decree theretofore entered in the case, and in which defendant had wholly made default. The court thereupon decreed that defendant owed the complainant, on account of the before-mentioned matters, the sum of $11,452.65, but that he should be allowed the following deductions:

To Robert L. King, circuit court commissioner, for taking
    testimony on part of defendant in accounting ............. $11 50
To Harry A. Silsbee for taking testimony ..................... 4 85
To Joseph W. Smith for attorney's services in accounting.. 104 80
To Smith and defendant in attending upon the accounting 12 50
To Walker & Fitzgerald for legal services and expenses as
    counsel for defendant ..................................... 211 35
To defendant for his services as trustee ..................... 100 00
For items upon the bill of Joseph W. Smith filed before the
    commissioner, attached to the deposition of Bump ...... 227 18
                                                              ———
    Total amount of these items ........................... $672 18

All other exceptions to the commissioner's report were overruled, and it was decreed that the defendant was owing the complainant the sum of $10,780.47, which was decreed to be paid as follows: $8,900 by assigning the mortgages before mentioned, with the exception of the Mead and Mitchell mortgages, and the balance of $1,880.47 to be paid in cash; and, if default was made in the payment, that complainant have execution therefor, with interest thereon from the date of the report of the commissioner, to wit, August 2, 1898, at 6 per cent. From this accounting both parties appeal.

We will first deal with the main questions in the case;

that is, those relating to the original decree. We think the court was not in error in holding that the two organ-izations were identical. The Supreme Assembly of the National Dotare was duly incorporated. There has never been a dissolution of the original corporation. It could not be dissolved by its own act, except by proceedings taken under chapter 282, 2 How. Stat. *Town* v. *Bank of River Raisin*, 2 Doug. 530. No such proceedings were taken.

But counsel for defendant contend that he is not seeking to show a dissolution, but an abandonment, and that he never had any dealings with the old corporation, and never received any securities from it. This position cannot be sustained. The mortgages were all executed to the "Supreme Assembly of the National Dotare, a corporation organized under the laws of the State of Michigan, mortgagee," and the assignments to the defendant were all executed under its corporate seal, by virtue of a resolution of the governing board of the corporation. The defendant cannot now be heard to say that the old corporation had been abandoned, and that he was dealing with a voluntary association which succeeded to it. Having dealt with the Supreme Assembly of the National Dotare as a corporation, and claiming title through it as a corporation, he cannot be heard to deny its corporate existence. *Swartwout* v. *Railroad Co.*, 24 Mich. 389; *Merchants', etc., Bank* v. *Stone*, 38 Mich. 779; *Estey Manfg. Co.* v. *Runnels*, 55 Mich. 130.

We are also of the opinion that the court was not in error in holding that the endowment provisions of the certificates of membership issued by the corporation were void. This act was before this court in *Walker* v. *Commissioner of Insurance*, 103 Mich. 344, and there received the construction for which complainant now contends. In that case, the fraternal society was called the "American Monitor," and its constitution provided for endowments payable at the end of 100 months. It was held that this provision was in excess of the power granted

by the act, and that it could not do any business except such as was permitted by the act. The same construction has been placed upon a similar statute in Illinois. *Chicago, etc., Indemnity Ass'n* v. *Hunt,* 127 Ill. 257 (2 L. R. A. 549); *Rockhold* v. *Benevolent Society,* 129 Ill. 440.

It appears, however, that these parties have put money into a common fund. The purposes for which it was paid in are found to be illegal, and equity requires that there should be an adjustment among all the parties on a fair accounting. The court below held that the parties holding these matured certificates had no legal right to be paid in preference to other certificate holders and members. Some members have paid in more than others. The receiver was appointed to make the proper and equitable distribution. In order to do this, he must first have possession of the securities which are now in the hands of the defendant, when a proper distribution can be made. The fund became a trust fund, in which every member who contributed thereto became beneficially interested *pro rata* the amount of his contribution. *Burton* v. *Schildbach,* 45 Mich. 504; *Stamm* v. *Benefit Ass'n,* 65 Mich. 317, and cases there cited; *In re Youths' Temple of Honor,* 73 Minn. 319. The original decree will therefore be affirmed.

As to the accounting: The complainant contends that the defendant should have been charged with the actual value of the Louise Mead mortgage. It appears that the defendant discharged that mortgage for $2,500, and it is claimed that the proofs show that it was worth much more than that. Some of the witnesses testified that it was worth $5,000. It appears that the mortgage was worth no more than could have been realized out of the property. From a careful reading of the testimony on this subject, we are satisfied that the amount fixed by the court was all that the mortgage was worth, taking into consideration the situation and surroundings of the property.

It is next claimed by complainant that the defendant should have been charged with interest on the amount

realized by him from the sale of mortgages. The only principle upon which trustees are chargeable with interest on trust funds is that they have received interest, have used the money themselves, or that they have been negligent either in not paying over the money or in not loaning or investing it so as to render it productive. The defendant trustee in the present case received no interest on the fund. After receiving this fund from the sale of mortgages, he paid a portion of it over to his *cestuis que trustent*. While we have found that these payments were unauthorized and illegal, as the entire membership was entitled to share in them, yet there is nothing to show but that defendant acted in good faith and under a mistake of law. He also kept the money without making any use of it until the court should determine to whom it should be paid. He was acting as trustee for the members whose certificates had matured, and his duty towards them was to protect their interest in the fund until the final determination of the rights of the parties. The court below did charge him with interest after the date of the report of the commissioner in the accounting. The rule seems to be that where the trustee, by mistake of law, pays the wrong person, and is compelled to pay again to the proper person, the court will not impose interest. *Saltmarsh* v. *Barrett*, 31 Beav. 349.

We are also of the opinion that, under the circumstances here shown, the court was not in error in allowing the trustee the sums he did for his services, costs, and expenses.

There are no other questions in the case, in our opinion, calling for discussion. We think the court below arrived at the correct conclusion on the whole matter of the accounting. The decree will be affirmed, with costs to the complainant.

The other Justices concurred.