**Vern LETTINGA, Plaintiff-Appellee,**

**v.**

**AGRISTOR CREDIT CORPORATION, a Delaware corporation, Defendant-Appellant.**

**No. 81–1106.**

United States Court of Appeals, Sixth Circuit.

Argued May 25, 1982.

Decided Aug. 26, 1982.

Thomas W. Hall, Jr., Mount Pleasant, Mich., for defendant-appellant.

C. Blair Mohney, Mohney, Goodrich & Titta, Robert Vanderlaan, Grand Rapids, Mich., for plaintiff-appellee.

Before KENNEDY and CONTIE, Circuit Judges, and TAYLOR,* District Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Agristor appeals from a jury verdict for Lettinga in this civil action alleging Agristor's wrongful destruction of dairy cows in which Lettinga had an unperfected purchase money security interest. Agristor claims the District Court erred in denying its motions for a judgment notwithstanding the verdict and a new trial.

Larry and Karen Recker are dairy farmers. Lettinga sold a total of ninety-six dairy cows to the Reckers on five occasions between March 1974 and December 1976. Prior to August 1974, the Reckers received forty-four cows in two transactions. Lettinga was paid for these cows and does not claim any interest in them.

In August 1974, Agristor agreed to loan the Reckers money for farm operating expenses but required as a prerequisite that the Reckers incorporate their farm. As part of the incorporation, the Reckers transferred 100 cows and other assets to Larry J. Recker Farms, Inc. Some of the Reckers' cows were not assigned to the corporation at that time but were commingled with those owned by the corporation. Larry J. Recker Farms, Inc. then entered into a security agreement with Agristor, giving Agristor a blanket security interest in all the cows, machinery, equipment, etc., belonging to the corporation. Agristor's security interest was properly perfected. Agristor periodically lent the corporation additional sums, retaining a security interest in the cows and other farm items.

Following the incorporation, Lettinga sold the Reckers a total of fifty-two cows in three separate transactions. Despite the Reckers' incorporation of their farming operations, these three transactions were with the Reckers in their individual capacities because it was Lettinga's practice never to sell cows to a corporation. An Agristor employee was apprised of at least some of these sales. Lettinga took a purchase money security interest on each occasion but failed to properly perfect two of them. Lettinga was not paid for these fifty-two cows.

Periodically, cows died and the Reckers and the corporation sold off unproductive cows. Eight or ten cows were lost when silage tipped over. No records were apparently kept of when cows owned individually by the Reckers or the corporation left the commingled herd. Neither were records kept to indicate whether these cows were owned free and clear or were subject to Lettinga's or Agristor's security interests.

In May 1977, the Reckers' corporation was automatically dissolved for failure to file annual reports as required by Michigan statute. Mich.Comp.Laws Ann. § 450.-1922(1). Subsequently, they encountered financial difficulties which necessitated the liquidation of their farm. Agristor made arrangements to repossess the "corporation's" cows. Larry Recker informed Agristor that Lettinga had an interest in the commingled herd. A written agreement, signed by Recker as president of the then dissolved corporation and by an agent of Agristor's released all of the Recker corporation's interest in all cows in its possession which were security for indebtedness owing Agristor or other secured parties. The agreement further stated that Agristor agreed to segregate all cows which were security for indebtedness owing Agristor or other secured parties and to notify them of their location and make the cows available for inspection upon proper identification. Agristor's agent and Larry Recker were in accord that the purpose of the agreement was to protect Lettinga's interest. Agristor then removed the entire commingled herd, then eighty cows in number, with Larry

---

* The Honorable Robert L. Taylor, United States District Court for the Eastern District of Tennessee, sitting by designation.

Recker's cooperation. When Recker assisted Agristor's agents in loading all the cows in Agristor's trucks, however, he did not cause any of them to be segregated out. The cows were then taken to different farms where state required medical testing indicated that some were infected with brucellosis, a condition requiring quarantine.

Of the eighty cows removed from the Recker's farm, five were unaccounted for. Nineteen were killed before Lettinga could view the remainder of the commingled herd. Lettinga, Larry Recker and one of Lettinga's employees were able to view the remaining fifty-six cows. Twenty-four cows were identified as having been sold by Lettinga; nineteen by visual identification and five from their registration papers. No one determined, however, whether all or some of these cows were in fact the collateral for one of Lettinga's security interests. Agristor refused to permit Lettinga to remove the twenty-four cows on the basis that his identification of them was insufficient.

Despite a letter from Lettinga to Agristor's agent indicating that Lettinga did not want Agristor to slaughter any of the twenty-four cows identified as having been sold by him, all fifty-six cows in Agristor's possession were slaughtered and sold for beef. The value of each cow as beef was $293 while the value of a healthy non-quarantined dairy cow was between $800 and $1,200. Agristor received $22,004.54 from the sale which it deposited in an escrow account. Lettinga received none of the proceeds.

Lettinga brought this action against Agristor to recover the value of the cows in which he had a security interest. Initially, he claimed that the three relevant security interests were perfected. Upon discovery that two were not, he proceeded on the basis that Agristor had no security interest in the Reckers' individually owned cows so that Agristor's and Lettinga's security interests did not compete. Despite this theory of non-competing security interests in dissimilar collateral, Lettinga continued to argue for the application of Mich.Comp. Laws Ann. §§ 440.9101 *et seq.*

The jury awarded him $21,166.66, the balance of the Reckers' indebtedness to him.

On appeal Agristor argues that there was insufficient evidence, when viewed in a light and with all reasonable inferences favorable to Lettinga, from which a reasonable minded jury could conclude that Lettinga and Agristor dealt with two different debtors and hence, had non-competing security interests in dissimilar collateral. Agristor claims the District Court erred in denying its motions for a directed verdict after finding that there was no evidence that Larry Recker intended to give Agristor a security interest in all the cows as of the date of their removal from Recker's farm. Assuming *arguendo* that Agristor had no security interest in some of the cows removed, it argues that Lettinga nevertheless could not recover because Lettinga only identified cows which he sold, not cows in which he had a security interest. Finally, in discussing the commercial reasonableness of the slaughter and sales of the cows, Agristor challenges the amount of damages awarded by the jury as being in excess of that amount over which reasonable minds' could agree under the evidence, and argues that the District Court abused its discretion in denying its motion for a new trial for that reason.

Michigan's version of Article 9 of the Uniform Commercial Code, Mich.Comp. Laws Ann. §§ 440.9101 *et seq.*, governs priority conflicts between parties that have secured and other interests in the same collateral. *Id.* A perfected security interest in collateral prevails over all subsequent security interests with the exception of a purchase money security interest in the same collateral. *Id.* § 440.9312(4)(5). If parties have security interests in different collateral, however, there is no priority conflict and the Uniform Commercial Code does not apply. The disposition of property subject to a security interest by one who has no interest in that property is governed by the Michigan law of conversion.

In Agristor's first general claim of error, it makes two separate arguments that it

had a security interest in all the cows on Reckers' farm. If so, its possession, slaughter and sale of the cows was proper and not a conversion of the property of another. Agristor argues that the Reckers used the corporation merely as an alter-ego of themselves and, for that reason, the corporation should be disregarded in the interests of justice and with it the distinction between corporate and non-corporate cows.[1] Agristor argues in the alternative that it acquired a security interest in all the cows at the time of their removal from the Reckers' farm which it perfected by possession.

 Ordinarily, a corporate veil will not be pierced absent fraud, sham, or other improper use of the corporate form. *Gottlieb v. Arrow Door Co.*, 364 Mich. 450, 452, 110 N.W.2d 767 (1961); *Lawton v. Gorman Furniture Corp.*, 90 Mich.App. 258, 265, 282 N.W.2d 747 (1979); *Williams v. American Title Ins. Co.*, 83 Mich.App. 686, 269 N.W.2d 481 (1978). The corporate veil may also be pierced in an appropriate case and in the interests of justice if an individual or individuals own all of the corporation's stock and assets. *Pettaway v. McConaghy*, 367 Mich. 651, 116 N.W.2d 789 (1962); *Montgomery v. Central National Bank & Trust Co. of Battle Creek*, 267 Mich. 142, 147–48, 255 N.W. 274 (1934); *Williams, supra*, 83 Mich.App. at 698, 269 N.W.2d 481; *Brown Bros. v. State Highway Comm'n*, 51 Mich. App. 448, 215 N.W.2d 591 (1974). In ascertaining whether the separate corporate entity should be disregarded, each case is *sui generis* and must be decided in accordance with its own underlying facts. *Ann Arbor v. University Cellar, Inc.*, 401 Mich. 279, 258 N.W.2d 1 (1977); *Williams, supra*, 83 Mich.App. at 698–99, 269 N.W. 481; *Brown, supra*, 51 Mich.App. at 452–53, 215 N.W.2d 1.

Larry Recker was listed as the sole shareholder and Larry and Karen Recker were the only officers in Larry J. Recker Farms, Inc. On May 15, 1977, the corporation was automatically dissolved for failure to file annual reports as required by state statute. Mich.Comp.Laws Ann. § 450.1922(1). In addition, there was no segregation in the herd of cows belonging to the Reckers individually and those belonging to the corporation and all milk proceeds from the farming operations were commingled.

The farm, however, was incorporated at Agristor's insistence as a prerequisite to the loan. At the time of incorporation, many of the Reckers' cows were not assigned to the corporation. Sales of cows to the Reckers individually, subsequent to incorporation, was a fact of which Agristor's employees were aware.

 There is sufficient evidence from which a reasonable jury could conclude that the Reckers and the corporation were separate debtors. Agristor is the party that required incorporation to protect itself yet now wants to set that status aside. A person or entity who has contracted with, or otherwise dealt with a company as a corporation is estopped to deny its corporate existence. *Calkins v. Bump*, 120 Mich. 335, 79 N.W. 491 (1899). This is not a case where the interest of justice requires that the corporate veil be pierced. Agristor does not have a security interest in non-corporate cows on this basis.

 At the close of Lettinga's and Agristor's proofs, Agristor moved for a directed verdict on the basis that its possession of all the cows pursuant to the written agreement between Agristor and Larry Recker and with Recker's cooperation gave Agristor a

---

**1.** Agristor's position is necessitated by the facts of this case. The evidence is uncontroverted that less than all of the Reckers' cows were transferred to Larry J. Recker Farms, Inc. at the time of its incorporation. The security interest Agristor took to secure its loan attached only to the corporation's cows. Lettinga's subsequent sales of cows were made to the Reckers individually. Since the corporation never had any rights in the dairy cows bought by the

Reckers individually after their incorporation, if the corporate form is respected, the unperfected purchase money security interest of Lettinga and the perfected security interest of Agristor did not compete because they were not in the same collateral. Thus, Agristor's possession, sale and slaughter of the cows in which it had no interest was an unlawful conversion. *See* Mich.Comp.Laws Ann. §§ 440.-9203, .9204, .9312(4), (5).

perfected security interest in all of the cows taken, including those in which Lettinga claimed an unperfected purchase money security interest. The District Court denied Agristor's motion on the ground that the facts did not show that a security interest was intended by Larry Recker's voluntary turnover of cows owned by the Reckers individually and subject to Lettinga's security interests. The issue was not submitted to the jury.

The provisions of Mich.Comp.Laws Ann. §§ 440.9101–.9994 apply to any transaction which is intended to create a security interest in personal property. *Id.* § 440.-9102(1)(a); *id.* Comment 1. A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as the following events have taken place. There must be an appropriate agreement that a security interest attach, value must be given and the debtor must have rights in the collateral. *Id.* § 440.9203(1)(a), .9204.

The District Court's determination that a security interest was not intended is supported by the language of the writing. The agreement only releases the dissolved corporation's cows to Agristor. Even though the writing purports to release the corporation's cows that are collateral for other secured parties, these latter cows are required by the terms of the agreement to be segregated, the secured parties notified and inspection and identification permitted. The agreement provided only that Agristor agreed to sell cows which secured its loan to reduce the corporation's debt. This clearly does not give Agristor any interest in cows owned by the Reckers personally. The fact that Larry Recker assisted in the removal of all cows does not change these terms. The District Court correctly concluded that the requisite intent to create a security interest was not present.

■ An additional problem exists. Value must be given to create a security interest. Agristor's loan to the corporation was already secured and no new value was given by it when the writing was executed and the personal assistance received. *See id.* §§ 440.9203(1)(b), .1201(44), .1201(44) Comment 44. Neither the writing nor Recker's assistance gives Agristor a security interest in all the cows as of the date of their removal.

Since Lettinga and Agristor did not deal with the same debtor and do not have security interests in the same collateral, both because the corporate veil cannot be pierced and because Recker did not intend to create a security interest in Agristor in cows he owned individually and subject to Lettinga's security interest, the remaining issues are removed from the scope of the Uniform Commercial Code, Mich.Comp.Laws Ann. §§ 440.9101 *et seq.,* except by analogy.

Agristor's second general claim of error is that Lettinga failed to prove the loss of property in which he had an interest because Lettinga did not identify the cows in the Recker's herd which were sold by him, owned by the Reckers individually *and* subject to one of his security interests.

■ When the District Court directed a verdict on the issue of fraud and deceit for Agristor at the close of the proofs, Lettinga's only possible remaining cause of action was for conversion of personal property. To state a claim, a plaintiff must ordinarily allege that he is the owner of the personal property described in the complaint or entitled to the immediate possession of it, that the defendant converted it to his own use and that the plaintiff has been damaged in a particular amount. *See Hance v. Tittabawassee Boom Co.,* 70 Mich. 277, 38 N.W. 228 (1888). Both parties' pleadings and arguments on appeal and in the trial court and the District Court's comments and jury instructions are couched in terms of the Uniform Commercial Code. This Court is not prevented from addressing the issue of whether Lettinga met his burden of proof under a conversion theory merely because of a misperception that the Uniform Commercial Code governed this cause because

the identification issue was expressly raised and addressed below.[2]

 Lettinga sought to treat the cows as fungible so that he could recover for that percentage which the cows identified as originally sold by him bore to the total number of cows in Agristor's possession when the identification was made, $^{24}/_{56}$ths, and apply this fraction to the eighty cows turned over to Agristor, for a total of thirty-four cows. Lettinga argued to the jury that he was entitled to 75% of the thirty-four, or twenty-six cows. The 75% figure was arbitrarily selected but was intended to take into account that Lettinga no longer had a security interest in the cows sold in 1974 and that cows were regularly culled from the herd, with the likelihood that cows sold by Lettinga in 1974 were removed from the herd in greater proportion to more recently purchased cows because they were subjected to more cullings.[3] We are, however, unable to accept Lettinga's underlying premise that the cows should be treated as fungible. Under the Uniform Commercial Code, collateral subject to a security interest, including cows, must be reasonably identified. *In re Reiser*, 20 U.C.C. Rpts. 529 (1976).[4] *See also Genesee Merchants Bank & Trust Co. v. Grand Packing Co.*, 8 Mich.App. 568, 573, 155 N.W.2d 193 (1967).[5] Similarly, to maintain a cause of action for conversion, an interest in specific, identifiable personalty must be pleaded and proved. *Hance, supra.*

To prove a loss of property in which Lettinga had an interest, three factors must converge: a particular cow must have been sold by Lettinga, owned by the Reckers individually and subject to one of Lettinga's security interests. Lettinga would have no right to recover for the conversion of cows sold by him and owned by the corporation or cows sold by him and owned by the Reckers individually but not subject to one of his security interests.

 There is sufficient evidence in the record to support the conclusion that four cows in the commingled herd satisfied these three requirements. Lettinga introduced the test records of the veterinarian who examined each cow removed from the Reckers' farm for brucellosis. The ear tag numbers of four of the cows tested matched four ear tag numbers on Lettinga's financing statements. Lettinga is entitled to recover for these four cows.

Beyond the identification of these four cows, Lettinga has simply failed to carry his burden of establishing that particular cows in which he had a security interest were taken by Agristor. Because the identification of cows subject to one of Lettinga's security interests was in issue in the pro-

2. We assume for the sake of argument that Lettinga has alleged all of the elements necessary to state a claim for conversion either in his complaint, by evidence introduced at trial or by argument. His complaint alleges a purchase money security interest in certain cows. Evidence introduced at trial would have permitted a conforming amendment alleging that his security interests ripened into a right of possession at the time Recker acknowledged the security interests of Agristor and others in the "repossession" agreement, and relinquished any interest he might have in the cows by turning all of them over to Agristor for segregation and disposal. *See* Fed.R.Civ.P. 15(b). A fair interpretation of the complaint and certainly the course of the proceedings below, is that Agristor allegedly engaged in the wrongful taking of certain cows, causing Lettinga to suffer damages.

3. It is questionable that this last hypothesis is valid in view of the testimony that cows were culled because of injury, stress or low milk production. There was no evidence as to the age of any of the cows and some purchased were calves. Moreover, the largest single reduction in the herd occurred when silage collapsed, an event that would affect the herd without regard to the date of sale.

4. In *Reiser* the information that the cows described in the financing statement and security agreement were in fact the cows auctioned, from which proceeds were derived, was supplied by the first creditor's testimony which the court found credible given his 58 years of experience in dealing with cows.

5. In *Genesee Merchants Bank* the Michigan Supreme Court applied a clearly erroneous standard of review and upheld the trial court's conclusion that plaintiff had failed to prove that the cattle purchased by defendants were the same cattle as those mortgaged by the debtor to a bank.

ceedings below where Lettinga had the opportunity and incentive to develop it, the interests of justice do not require that Lettinga be allowed a second opportunity to prove the identity of the remaining cows as subject to one of his security interests in a second trial. Instead, the case is reversed and remanded to the District Court for a trial on the merits, confined solely to the issue of the amount of damages suffered by plaintiff as a result of the wrongful conversion of the four identified cows. Remand on this issue is necessary because the jury returned a general verdict and it is impossible to discern on how many cows the jury's award was based.