*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

*In re* RALPH A. SIDDELL LIVING TRUST.

---

DAVID HEILMAN, Trustee of the RALPH A. SIDDELL LIVING TRUST, and WOUNDED WARRIOR PROJECT,

      Appellees,

v

KIRK A. SIDDELL,

      Appellant.

UNPUBLISHED
May 11, 2023

No. 359979
Allegan Probate Court
LC No. 21-062791-TV

---

*In re* RALPH A. SIDDELL LIVING TRUST.

---

DAVID R. HEILMAN, Trustee of the RALPH A. SIDDELL LIVING TRUST, and WOUNDED WARRIOR PROJECT,

      Appellees,

v

LINDA K. SMITH,

      Appellant.

No. 359991
Allegan Probate Court
LC No. 21-062888-TV

---

LINDA K. SMITH,

      Plaintiff-Appellant,

v

No. 362535

-1-

DAVID HEILMAN, Trustee of the RALPH A.
SIDDELL LIVING TRUST and Trustee of the
WILLIAM H. JOHNSON, JR., LIVING TRUST,

        Defendant-Appellee.

---

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

These consolidated appeals arise from the administration of individual trusts created by William (Bill) H. Johnson and his spouse, Ralph A. Siddell. In Docket No. 362535, Linda K. Smith, Bill's sister, appeals the probate court's order issued after a bench trial. In addition to challenging several of the court's findings and rulings after the trial, Smith challenges the court's earlier orders dismissing her claims against David Heilman for conversion and denying her motion for leave to amend her complaint. In Docket No. 359991, Smith appeals the probate court's order denying her petition for declaratory relief and to invalidate the 2017 amendment to the Ralph A. Siddell Living Trust. In Docket No. 359979, Kirk Siddell, Ralph's son, appeals the probate court's order granting summary disposition of the petition to determine the validity of the Ralph A. Siddell Living Trust in favor of Heilman. Finding no error requiring reversal, we affirm the probate court's orders.

## I. RELEVANT FACTS AND PROCEEDINGS

In 1998 Bill and Ralph each created a trust, and in 2012, each amended and restated his trust agreement. Each assigned to his trust "all of [his] interest in" "[a]ll tangible and intangible personal property of any kind or nature whatsoever and wherever located." Article Three of each trust addressed the distribution of the trust property. Pertinent to these appeals, Smith was to receive $100,000 under each trust, and the survivor received the decedent's pets, along with $25,000 for a pet trust. If the decedent did not have any animals at the time of his death, that gift would lapse and be added to the remainder. The remaining assets, including all tangible personal property, were to be held in trust for the survivor's benefit. The trustee was given the "discretion to distribute income and/or principal" for the survivor's "health, support and maintenance" if the trustee determined that the income and other property available to the survivor was insufficient to provide for his maintenance. After the survivor's death, three named friends were to have the opportunity to select any item from the household furnishings or outdoor items, and one of them also received a large bronze deer that stood in the front yard of Bill and Ralph's residence. All remaining tangible personal property was to be distributed to Smith. The remaining financial assets were to be evenly divided between the All Saints Episcopal Church Endowment Fund, under certain conditions, and Smith. Bill and Ralph were co-trustees of each other's trust, with the survivor being named successor trustee. Both trusts were revocable.

Bill died suddenly in 2016. At the time of his death, Bill had $371,476.94 in assets in trust accounts with Edward Jones. Ralph began serving as the sole trustee of Bill's trust in accordance with the terms of the trust. In February 2017, the probate court appointed Heilman as co-trustee

of Bill's trust. According to the petition, Ralph, who was 86 years old at the time, did not wish to resign as trustee but wanted help with administering Bill's trust. The following month, Ralph restated and amended his trust agreement (the 2017 Siddell Trust), substantially changing Smith's distribution. Under the 2017 Siddell Trust, upon Ralph's death, the three friends were to have the opportunity to select any items of tangible personal property from Bill's and Ralph's residence. After the three men selected everything they wanted, Smith could choose 10 items from the remaining personal property. Any items remaining after that were to be sold by the trustee. The trustee was to create a pet trust in accordance with Ralph's instructions and give $50,000 to Kirk and a total of $12,000 to five specified charities. The remainder of the trust principal was to be given to All Saints Episcopal Church Endowment Fund (50%), Christian Neighbors (25%), and Wounded Warriors Project (25%). Smith had no share of the remainder.

Ralph died in August 2019, and the trustee notified the beneficiaries of the existence of Ralph's trust and of their interests therein. On January 6, 2020, Smith presented Heilman with a statement and proof of claim in the amount of $500,000, alleging that assets transferred to Bill's trust had been mismanaged, thereby depriving her of tangible personal property. Heilman denied the claim. Four days later, Smith filed a civil action against Heilman, in his capacity as trustee of Bill's trust and the Siddell Trust, alleging breaches of fiduciary duties regarding Bill's trust's tangible personal property and financial assets, common-law conversion, statutory conversion under MCL 600.2919a, and sought treble damages under MCL 700.7813(4).

After the close of discovery in the civil case, Heilman moved for partial summary disposition of Smith's complaint. Heilman argued that Smith's claims for conversion failed because Bill and Ralph owned the tangible personal property jointly, with rights of survivorship, and, therefore, the property passed to Ralph's sole ownership after Bill's death. In addition, even if Smith had an ownership interest in the personal property, she had no right of immediate possession of any of the property during Ralph's lifetime, and the dispute about the ownership of the property that arose after Ralph's death justified Heilman's not distributing the property until the dispute was resolved. Further, Smith could not show that she suffered any damages because all the tangible personal property was currently stored in Bill and Ralph's marital home, awaiting distribution. Smith did not respond to Heilman's motion.

After an attempt at mediation failed, Heilman petitioned the probate court to determine the validity of the 2017 Siddell Trust and then moved for summary disposition on his petition. Heilman argued that the beneficiaries of the 2017 Siddell Trust had received notice that complied with MCL 700.7604(1)(b), which meant that anyone who wanted to challenge the validity of the 2017 Siddell Trust had six months to do so. No one had petitioned to set aside the trust during the limitations period, and now all such challenges were time-barred.

While Heilman's motions for summary disposition on Smith's conversion claims and on his petition for validation were pending, Smith moved for leave to amend her complaint to add a challenge to the validity of the 2017 Siddell Trust. Smith asserted that Ralph lacked the capacity to execute the trust and that the trust resulted from the "misrepresentation, coercion, deceit, and undue influence" exerted by Heilman and others. Before the probate court ruled on Smith's motion, she petitioned for declaratory relief and to set aside the 2017 Siddell Trust. Smith contended that the notice she received after Ralph's death did not comply with MCL 700.7604 because it did not include the relevant portion of the Ralph's 2012 trust (2012 Siddell Trust) that

would have shown that the 2017 Siddell Trust disinherited her and because the notice did not clearly inform her that if she did not challenge the validity of the 2017 Siddell Trust during the six-month limitations period, she would be forever barred from doing so.

After a period of additional briefing, the probate court granted Heilman's motion for summary disposition of his petition to validate the 2017 Siddell Trust. The probate court determined that Kirk did not have standing to challenge the validity of the 2017 Siddell Trust because he did not experience any property loss under the trust. Instead, he received a beneficial increase of $15,000. The court found that Smith was the real party in interest for purposes of challenging the trust because the trust significantly affected her interests. The probate court further concluded that neither Smith's nor Kirk's claims survived the six-month limitations period provided by MCL 700.7604(1)(b), as the trustee's notices to Kirk and Smith complied with MCL 700.7604(1)(b). For the same reason, the probate court denied Smith's petition for declaratory relief. As to Ralph's alleged incapacity, the court concluded that the 2017 Siddell Trust was revocable while Ralph was alive and that Ralph was never deemed incapacitated in any of the ways provided for in the trust: he was never pronounced incapacitated by a court, and he was not declared incapacitated by a physician who had examined him within the last three months.

The probate court also granted partial summary disposition of Smith's complaint in favor of Heilman. As to common-law conversion, the court found that Smith had not shown that she had a property right in, or a right to immediate possession of, the personal property being held by Heilman. The probate court further determined that because there was no indication that the tangible personal property was not still located within Bill and Ralph's common home and ready for distribution upon settlement of the 2017 Siddell Trust, Smith had not suffered any actual damages. Smith's claim for common-law and statutory conversion therefore failed. Lastly, the probate court denied Smith's motion for leave to amend her complaint, explaining that a petition to set aside a trust must be filed as a new matter and could not arise out of an amendment to a civil action.

After a bench trial on Smith's claims for breach of fiduciary duty, the probate court agreed that the trustees of Bill's trust had breached their fiduciary duties and ordered the return of $120,000 to Bill's trust. The probate court also ordered Heilman to sell the tangible personal property and to split the proceeds equally between Bill's trust and Ralph's trust. Kirk and Smith appealed the court's orders, and their appeals were consolidated.[1]

## II. ANALYSIS

## A. DOCKET NO. 359979

As an initial matter, Heilman urges this Court to dismiss Kirk's appeal for lack of appellate standing.

---

[1] *In re Ralph A Siddell Living Trust*, unpublished order of the Court of Appeals, entered December 8, 2022 (Docket Nos. 359979, 359991, and 362535).

Whether a party has standing is a question of law that this Court reviews de novo. *Newman v Real Time Resolutions, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357279); slip op at 3. To have appellate standing, a person must be an "aggrieved party." MCR 7.203(A); *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006).

> This requirement stems from the fact that this Court's judicial power, established by Const 1963, art 6, § 1, extends only to a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute, and one in which the plaintiff has suffered a particularized or personal injury. [*Manuel v Gill*, 481 Mich 637, 643; 753 NW2d 48 (2008) (quotation marks and citation omitted).]

"To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Id.* (quotation marks and citation omitted). Further,

> to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [*Federated Ins Co*, 475 Mich at 291-292.]

Kirk has not identified any "concrete or particularized injury" that he suffered from the probate court's conclusion that Kirk was time-barred from challenging the 2017 Siddell Trust, nor has he shown how he would benefit if this Court reversed the probate court's decision.

Kirk received $50,000 under the 2017 Siddell Trust. Had the probate court invalidated that trust and reinstated the 2012 Siddell Trust, Kirk would have received $35,000 and had a contingent interest in 25% of the gift designated for the All Saints Episcopal Church Endowment Fund if that gift lapsed on the basis that the church was no longer active or had merged with another church or organization. The 2017 Siddell Trust made a gift to the church's Endowment Fund with similar conditions attached. The record shows that an attorney appeared on behalf of the church's Endowment Fund in Docket No. 362535, and that Kirk and Smith served their claims of appeal on the Endowment Fund. These facts tend toward the conclusion that the church is active, independent, and able to receive the designated distribution. Accordingly, Kirk would not benefit from the invalidation of the 2017 Siddell Trust and reinstatement of the 2012 Siddell Trust. "A party who could not benefit from a change in the judgment has no appealable interest." *Ford Motor Co v Jackson*, 399 Mich 213, 226; 249 NW2d 29 (1976) (quotation marks and citation omitted).

Because Kirk failed to identify a particularized or concrete injury from the probate court's action or how it would improve his position if this Court granted the requested relief, we dismiss his appeal for lack of jurisdiction. See *Manuel*, 481 Mich at 643.

## B. DOCKET NO. 359991

### 1. SUFFICIENCY OF NOTIFICATION

Turning to Smith's challenges to the probate court orders, Smith first argues that the court erred by denying her petition for declaratory relief and to set aside the 2017 Siddell Trust on the basis that the trustee's notification met the requirements of MCL 700.7604.

This Court reviews de novo whether a probate court properly interpreted and applied the relevant statutes. *In re Estate of Carlsen*, 339 Mich App 483, 489; 984 NW2d 788 (2021). This Court reviews the probate court's dispositional rulings for an abuse of discretion. *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). An abuse of discretion occurs when the probate court's decision is outside the range of principled outcomes. See *In re Kostin*, 278 Mich App 47, 51; 748 NW2d 583 (2008).

MCL 700.7604 provides in relevant part:

(1) A person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of the following:

(a) Two years after the settlor's death.

(b) Six months after the trustee sent the person a notice informing the person of all of the following:

(*i*) The trust's existence.

(*ii*) The date of the trust instrument.

(*iii*) The date of any amendments known to the trustee.

(*iv*) A copy of relevant portions of the terms of the trust that describe or affect the person's interest in the trust, if any.

(*v*) The settlor's name.

(*vi*) The trustee's name and address.

(*vii*) The time allowed for commencing a proceeding.

Smith argues that because the notice she received regarding her interest in the 2017 Siddell Trust lacked information material to her ability to protect her interest under the 2012 Siddell Trust, the notice did not fulfill the requirements of MCL 700.7604(1)(b)(*iv*) and therefore did not trigger the six-month period limitations period. Smith's argument fails because the 2012 Siddell Trust was not relevant to her interest under the 2017 Siddell Trust.

MCL 700.7604(1)(b)(*iv*) requires the trustee to send only the "relevant portions" of the terms of a trust that describe or affect the beneficiary's interest in the trust. The 2012 Siddell Trust

-6-

specifically allowed Ralph to amend or revoke the trust at any time. The trust stated that it was intended to be revocable and would be irrevocable when Ralph died or was declared incapacitated in the manner described in the trust. If a trust is in writing, it may be revoked or amended with a writing that clearly manifests the settlor's intent to do so. MCL 700.7602(3)(b)(*i*). The 2017 Siddell Trust clearly manifested Ralph's intent to amend the 2012 Siddell Trust, and he believed that the extensive amendments he wanted to make to his trust would be "better understood" if he restated his entire trust. To that end, Ralph replaced the 2012 Siddell Trust with the 2017 Siddell Trust, which set forth the terms of the distribution of Ralph's property going forward. Having been replaced by the 2017 Siddell Trust, the 2012 version of Ralph's trust was no longer relevant to the distribution of Ralph's property. The trustee's notice under MCL 700.7604(1)(b) was not insufficient because it lacked portions of the 2012 Siddell Trust.[2]

We also reject Smith's argument that the notice was inadequate because it did not plainly advise her that challenges to the validity of the 2017 Siddell Trust would be time-barred if not raised within six months of the date of the notice. MCL 700.7604(1)(b)(*vii*) requires the trustee's notice to include "[t]he time allowed for commencing a proceeding." The notice provided to Smith stated, "If you wish to commence a judicial proceeding to contest the validity of the Trust, you must do so prior to six months from the date of the mailing of this letter." "Must" is commonly understood to mean to "be commanded or requested to"; in a legal context, "must" means to be "required by law, custom, or moral conscience." *Merriam-Webster's Collegiate Dictionary* (11th ed). The notice sent to Smith clearly advised her that if she wanted to contest the validity of the 2017 Siddell Trust in a judicial proceeding, the law required her to do so within six months from the date of the letter, October 24, 2019. MCL 700.7604 requires trustees to provide notice informing recipients that they may challenge the validity of a trust and the period allowed for bringing such a challenge. Nothing in the statute requires a trustee to inform the recipients of the specific legal consequences of not acting during the time allowed.

*In re Pollack Trust*, 309 Mich App 125, 136; 867 NW2d 884 (2015), does not alter our conclusion, as the relevant question in that case was whether the limitations period in MCL 700.7604 applied because the Michigan Trust Code (MTC), of which the statute is a part, became effective after the plaintiff acquired his right to challenge the validity of the trust. *Id*. at 136-137. This Court did not address the language of the notification, let alone hold that it had

---

[2]This interpretation of MCL 700.7604(1)(b)(*iv*) is supported by consideration of the purpose of the Michigan Trust Code (MTC), MCL 700.7101 *et seq*. MCL 700.8201(1) requires the MTC to be construed and applied to promote its underlying purposes and policies. Among those purposes and policies are "[t]o make more comprehensive and to clarify the law governing trusts in this state" and to "foster certainty in the law so that settlors of trusts will have confidence that their instructions will be carried out as expressed in the terms of the trust." MCL 700.8201(2)(b) and (c). Including irrelevant terms from superseded documents in the notice required by § 7604 arguably would muddy the law governing trusts and unsettle settlors with the possibility that a beneficiary unhappy with the settlor's instructions would commence trust-depleting litigation to obtain the distribution reflected in a superseded document.

to include information about the legal consequences of not challenging the validity of a trust within the limitations period.

## 2. MOTION FOR LEAVE TO AMEND

Smith next argues that the probate court erred by denying her motion for leave to amend her complaint. We review a probate court's decision on a motion for leave to amend a complaint for an abuse of discretion. See *In re Kostin*, 278 Mich App at 51.

A party who wishes to amend a pleading outside the period provided in MCR 2.118(A)(1) can only amend her pleading by leave of the court or by written consent of the opposing party, MCR 2.118(A)(2). Leave to amend "shall be freely given when justice so requires." MCR 2.118(A)(2). "An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." MCR 2.118(D); see also *Doyle v Hutzel Hosp*, 241 Mich App 206, 212-213; 615 NW2d 759 (2000) (stating that an "amended pleading can introduce new facts, new theories, or even a different cause of action as long as the amendment arises from the same transactional setting that was set forth in the original pleading"). "The doctrine of 'relation back' was devised by the courts to associate the amended matter with the date of the original pleading, so that it would not be barred by the statute of limitations." *LaBar v Cooper*, 376 Mich 401, 405; 137 NW2d 136 (1965). "[T]he relation-back doctrine does not extend to the addition of new parties." *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007) (quotation marks and citation omitted).

Proceedings in the probate court are governed by the general rules of civil procedure found in MCR 2.001 through MCR 2.630, except when modified by the rules governing procedure in probate courts, found in Chapter 5 of the Michigan Court Rules. MCR 5.101(A) provides that there are two forms of action in the court: a "proceeding" and a "civil action." See also *In re Brown*, 229 Mich App 496, 501; 582 NW2d 530 (1998) (indicating that "the specialized court rules pertaining to the probate court recognize a petition-initiated proceeding as a proper form of action"). An action filed by a claimant after notice that her claim has been disallowed "must be titled civil actions and commenced by filing a complaint and are governed by the rules applicable to civil actions in circuit court." MCR 5.101(C)(2). However, a proceeding concerning a trust is commenced by filing a petition in court. MCR 5.501(C). MCL 700.7208 likewise instructs that a proceeding in the probate court brought by a beneficiary that concerns the validity of a trust "is initiated by filing a petition . . . ."

Although Smith correctly initiated a civil action against Heilman by filing a complaint, see MCR 5.101(C)(2), she did not commence a new proceeding to invalidate the 2017 Siddell Trust by filing a petition, as required under MCL 700.7208 and MCR 5.501(C). Smith cites no authority allowing the amendment of a complaint with a cause of action that should have been filed in a petition. Her reliance on the definition of "proceeding" in MCL 700.1106(t) to argue that the probate court's distinction between a civil action and a proceeding was a distinction without a substantive difference is unavailing, given the clear instruction in MCL 700.7208 and MCR 5.501(C) that a proceeding concerning a trust is initiated by a petition.

In any event, even if the probate court erred by denying Smith's motion for leave to amend, the court's error did not affect the outcome of the proceeding. See MCR 2.613(A); *Matter of Moriconi*, 337 Mich App 515, 522; 977 NW2d 583 (2021). The amended pleading would not have allowed Smith to avoid the consequences of MCL 700.7604's limitations period by relating back to the date that she filed her original complaint because the amendment did not arise out of the "conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." MCR 2.118(D).

The transactional setting for Smith's original complaint was Heilman's denial of her claim against Ralph's estate, the alleged mismanagement of Bill's financial assets, and the alleged mismanagement of tangible personal property that Smith believed belonged wholly and solely to Bill's trust. By contrast, the transactional setting for Count I of Smith's proposed amended pleading involved the creation of the 2017 Siddell Trust and inferences drawn from Heilman's and others' interactions with Ralph, which Smith believed constituted "misrepresentation, coercion, deceit, and undue influence." Although Smith made no mention of Ralph's capacity when she alleged the mismanagement of Bill's trust, she alleged in her proposed amended pleading that Ralph lacked capacity and that Heilman and George Stoutin took advantage of Ralph's age, frailty, grief, and cognitive decline to overpower his freewill. Because Smith's proposed amendment did not arise out of the same conduct as did her allegations of breach of fiduciary duties with regard to the management of Bill's trust, the relation-back doctrine would not have applied and, therefore, even if the probate court had granted her motion for leave to amend, Smith's count for the invalidation of the 2017 Siddell Trust would have been time-barred.

The probate court did not abuse its discretion by rejecting Smith's motion for leave to amend. See *In re Kostin*, 278 Mich App at 51.

## C. DOCKET NO. 362535

### 1. PARTIAL SUMMARY DISPOSITION

Smith contends that the probate court erred by granting partial summary disposition of her complaint in favor of Heilman. This Court reviews de novo a probate court's decision on a motion for summary disposition. See *In re Leete Estate*, 290 Mich App 647, 659; 803 NW2d 889 (2010).

The probate court granted summary disposition under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). A trial court evaluating a motion for summary disposition under subrule (C)(10) "considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

To establish a claim for common-law conversion, a plaintiff must show (1) an ownership interest, absolute or qualified, in identifiable personal property, see *Hance v Tittabawassee Boom Co*, 70 Mich 227, 231; 38 NW 228 (1888); (2) that he or she had the right to immediate possession

-9-

of the property, see *Thomas v Watt*, 104 Mich 201, 207; 62 NW 345 (1895); (3) that the defendant wrongfully exerted dominion over the property inconsistent with the plaintiff's rights, *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015), and (4) actual damages. Proof of conversion is necessary to establish claims of statutory conversion under MCL 600.2919a and MCL 700.7813.

Viewing the evidence in the light most favorable to Smith, she did not identify any tangible personal property that Bill owned individually and to which she had a right, nor did she establish that she ever had a right of immediate possession of any of the tangible personal property. Bill's trust was very clear that the tangible personal property was to be held in trust for Ralph's benefit until Ralph died. Because Bill's trust instructed Ralph, as successor trustee of Bill's trust, to hold the tangible personal property in trust for his benefit, Smith did not have the right of immediate possession of the property after Bill died. After Ralph died, a dispute arose over ownership of the property and the validity of the 2017 Siddell Trust, and these disputes delayed the distribution of property. In light of Heilman's general duty to administer the trust in accordance with its terms and purposes, MCL 700.7801, Heilman's waiting to distribute the trust property until the ownership dispute was resolved could hardly constitute an *unauthorized* exercise of dominion or control over the property.[3] The probate court did not err by granting summary disposition on Smith's claim for common-law conversion in favor of Heilman.

Nor did the probate court err by granting summary disposition of Smith's statutory conversion claims. To establish statutory conversion under MCL 600.2919a, a plaintiff must satisfy the elements of a common-law conversion claim, as well as show that the defendant actually knew that the property was converted. See *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 197; 694 NW2d 544 (2005). Because Smith cannot establish common-law conversion, she cannot establish statutory conversion under MCL 600.2919a or MCL 700.7813(4). Accordingly, the trial court did not err by granting summary disposition of her statutory conversion claim in favor of Heilman.

2. ORDER AFTER TRIAL

Lastly, Smith contends that the probate court erred by ruling after trial that the deductions from Bill's trust for Ralph were properly characterized as health, maintenance, and support payments. She also argues that the probate court erred by ordering Heilman to sell the tangible personal property and split the proceeds between Bill's trust and Ralph's trust.

---

[3] As to damages, Smith asserts that all the personal property assigned by Bill to his trust is gone from the trust. It is true that Heilman maintained that Bill's trust did not contain any tangible personal property, and the probate court suggested that Bill's trust assign all of Bill's tangible personal property to Ralph. However, Heilman attested that all the tangible personal property was accounted for and in storage, ready to be distributed upon resolution of the ownership dispute. The property was available to be distributed to Smith had the probate court determined that she was the rightful owner and had an immediate right to possess any identifiable property. Given that the tangible personal property at issue remained in the possession of the trustee, awaiting distribution to the rightful owner, Smith failed to show what actual damages she suffered.

-10-

Although Bill's trust became irrevocable upon Bill's death, it came to light after Ralph's death that, while acting as trustee of Bill's trust, Ralph frequently comingled his money with the money in Bill's Edward Jones accounts. Ralph paid for expenses such as utilities, healthcare, and online shopping and made charitable contributions using money from Bill's Edward Jones accounts. But as indicated, Bill's trust allowed Ralph "discretion to distribute income and/or principal" for the survivor's "health, support and maintenance" if the trustee determined that the income and other property available to the survivor was insufficient to provide for his maintenance. Smith challenged whether utilities, online shopping, and other such expenses fell under health, maintenance, or support, and whether there had been any proper determination that Ralph's income and property were insufficient to provide for his maintenance before funds from Bill's trust were used.

Smith argues primarily that the money Ralph spent from Bill's trust on shopping because it made him feel good did not fall into the categories of health, support, or maintenance. *Black's Law Dictionary* (11th ed) defines "health" as: "1. The quality, state, or condition of being sound or whole in body, mind, or soul; esp., freedom from pain or sickness. 2. The relative quality, state, or condition of one's physical or mental well-being, whether good or bad." Similarly, *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "health" as "the condition of being sound in body, mind, or spirit; *esp*: freedom from physical disease or pain" or "the general condition of the body." "Support" and "maintenance" are synonyms and imply a level of intended support in keeping with the "accustomed standard of living or station in life" that the beneficiary enjoyed at the time of the settlor's death. Restatement Trusts, 3d, § 50, comment d(2). Support and maintenance provisions "do not normally encompass payments that are unrelated to support but merely contribute in other ways to a beneficiary's contentment or happiness." *Id*.

The probate court considered that Michigan allowed broad discretion in the application of a maintenance provision, the length of the couple's relationship, Bill's desire to provide for Ralph's medical needs and happiness, and evidence indicating that Ralph's life after Bill's death was similar to his life with Bill, and concluded that Ralph did not abuse his discretion by using Bill's trust funds to pay for healthcare expenses, utilities, credit cards, insurance, other debts, and online purchases. The record supports the probate court's conclusion.

Although shopping did make Ralph feel good, the record suggests that shopping and collecting were part of Ralph's usual manner of living. Heilman affirmed that Ralph was a "prolific shopper," and testified that Bill said that Ralph was the reason that they began collecting and had "all their stuff." Heilman said that Bill wanted Ralph to be financially able to stay in the house as long as possible, but that he should be "left to his shopping." This record evidence supports the probate court's observation that Ralph's "expenses would not have been a surprise to Bill do [sic, due] to the circumstances and habits of the parties. The testimony showed that Ralph's life, while his health was failing, was similar to his life with Bill." The court found that "Bill unquestionably wanted to provide for Ralph's medical needs and happiness" and that, for this reason, Ralph's use of Bill's trust funds to pay for utilities, credit cards, insurance, other debts, and online purchases was not shown to be an abuse of discretion. Under these facts, we cannot conclude that the probate court's factual findings were clearly erroneous or that its decision was an abuse of discretion.

However, the probate court agreed with Smith that the trustees "committed breaches of fiduciary duties regarding the financial assets/residue" of Bill's trust. Consequently, the probate court ordered the return of $120,000 to Bill's trust, as well as half the proceeds from the sale of the tangible personal property at issue. Smith asserts that the probate court erred by determining that she was entitled to 50% of the proceeds from the sale of the tangible personal property rather than all the actual personal property. And even if she was entitled to only half of the property, she should receive the actual property rather than proceeds from the property's sale. In arriving at the decision to sell the property and split the proceeds, the probate court found

> no easy way to assist in determining Bill's personal property at the creation of the Trust. The couple desired to share equally, but did not take steps to separate the items or clean up the Trust. There were no bills of sale or joint ownerships created, other than the house and the automobiles.

The probate court's factual findings are supported by the record and are not clearly erroneous and, under the circumstances presented, it cannot be said that the probate court's decision to order the property sold and the proceeds evenly split between Bill's trust and Ralph's trust fell outside the range of reasonable outcomes.[4]

Affirmed.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney

---

[4] Heilman urges this Court to reconsider the probate court's damages award, asserting that Ralph did not transfer $120,000 from Bill's trust to himself. "In the absence of a cross appeal, errors claimed to be prejudicial to appellee ordinarily cannot be considered, nor can affirmative relief to appellee be granted." See *McCardel v Smolen*, 404 Mich 89, 95 n 6 (1978) (quotation marks and citation omitted). Because Heilman did not file a cross-appeal, he cannot obtain a more favorable decision from this Court.